100 N.J. Super. 122 (1968)
241 A.2d 267
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERALD SCHENK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1968.
Decided March 22, 1968.
*123 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mrs. Esther Strum Frankel argued the cause for appellant (Messrs. Frankel & Frankel, attorneys).
Mr. Rushton H. Ridgway, Assistant County Prosecutor, argued the cause for respondent (Mr. Joseph Tuso, County Prosecutor, attorney).
*124 The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Gerald Schenk appeals from a conviction, following a jury trial, on an indictment for arson which charged that on August 27, 1965 he did "willfully, maliciously and feloniously burn the dwelling house of William Roberts * * * contrary to the provisions of N.J.S. 2A:89-1."
The State contended at the trial that shortly after 1 A.M. on the aforsesaid date defendant set fire to the dwelling house at 507 Cherry Street in Vineland occupied by William Roberts, his wife Irene, their child Tina, and Mrs. Roberts' child Wayne. Defendant was the father of Wayne. The State's theory was that after the Roberts family had retired for the night defendant cut an opening in the screen of a living room window and set the fire by either tossing or placing pieces of lighted newspaper in the room. The motive for the crime was alleged to be defendant's bitterness caused by Mrs. Roberts' refusal to let him see his child.
Mrs. Roberts testified that at about 1 A.M. on August 27 she heard a crashing noise downstairs in the house. She awakened her husband and when they reached the lower floor they saw a fire burning in the area of the living room window. Roberts quickly extinguished it with glasses of water and telephoned the police.
Mrs. Roberts testified that she looked out of the window and saw defendant going towards his car which was parked on the street. She screamed to her husband, "It was Jerry." Roberts testified that he saw the car being driven away and that shortly thereafter, he again saw it being driven past the house. He again telephoned the police giving them defendant's name and a description of the car. Roberts' testimony concerning the observation of the defendant's car was corroborated by Anthony Mennone, a next door neighbor.
Police Officer Pitts testified that at 1:25 A.M., he responded to a radio call to go to the Roberts' home because someone had thrown a firebomb into the house. While driving there he saw defendant's car speeding east on Cherry Street. He *125 took up pursuit and stopped the car. He thereafter turned over the custody of defendant to another police officer who had responded to his call for assistance. Pitts said he found a torn newspaper in defendant's car, and that thereafter he drove to the Roberts' house to investigate the damage caused by the fire. He said pieces of a burned newspaper were found in the debris.
Defendant denied that he committed the crime charged in the indictment. He testified that he had received a telephone call from Mrs. Roberts during the day inviting him to call at her house after 10 P.M. that evening to see his son after her husband had left for work. He said he went there at about 11 P.M. but was refused admittance by Mrs. Roberts who said that her husband was out but was expected to return in a short time. He said he then drove away and a short time later was stopped and arrested by the police. Defendant's testimony was corroborated by Judith Taylor, a friend of his, who said that at defendant's request she had followed him in her car to the Roberts' house that evening, had observed him talking to Mrs. Roberts, and thereafter saw him drive away.
Mrs. Roberts denied that she had telephoned defendant as he alleged and both she and her husband denied that defendant had called at their home that evening to see his son.
Defendant first contends that the State failed to prove that the dwelling house had been burned  an essential element required to justify a conviction of arson under N.J.S. 2A:89-1. He alleges that at best the evidence showed only a burning of personal property which is not proscribed under the statute on which the indictment was based.
N.J.S. 2A:89-1 in pertinent part defines arson as follows:
"Any person who willfully or maliciously burns or consents to the burning of a dwelling house * * * by means whereof a dwelling house shall be burnt * * * is guilty of arson * * *."
*126 Under the statute and at common law there must be an actual burning of the dwelling house to constitute the crime of arson, although it is not necessary that the building be wholly consumed, or even seriously damaged. If any part, however small, is consumed it is sufficient. State v. Morris, 98 N.J.L. 621, 625 (Sup. Ct. 1923), affirmed 99 N.J.L. 526 (E. & A. 1924); O'Daniel v. State, 188 Ind. 477, 123 N.E. 241, 242 (1919); Curtis, The Law of Arson (1936), § 82, pp. 99-101. See also annotation, "Arson  Burning as Element," 1 A.L.R. 1163, 1166, and 5 Am. Jur.2d (1962), Arson and Related Offenses, § 1 et seq. The statute which is based on the common law crime of arson is not violated by the burning of personal property contained in the building if no part of the structure is damaged. Curtis, Law of Arson, supra, § 85, p. 104. The burning of goods and chattels is a crime proscribed by another statute, N.J.S. 2A:89-5, of which defendant was not charged in the indictment.
A house is not burned within the meaning of an accusation of arson when it is merely scorched, or smoked, or discolored by heat. Curtis, Law of Arson, supra, § 83, p. 101; State v. Pisano, 107 Conn. 630, 141 A. 660, 661 (Sup. Ct. of Er. 1927); Woolsey v. State, 30 Tex. App. 346, 17 S.W. 546, 547 (Ct. App. 1891); and see 2 Wharton's Criminal Law and Procedure (1957), § 392, p. 7. The offense is committed if as a result of burning any part of the wooden structure is charred or if the fiber or texture of the wood is altered or destroyed. Curtis, Law of Arson, supra, § 83, p. 101; State v. Pisano, supra, and see Annotation, "Arson  Burning as Element," 1 A.L.R., supra, pp. 1166-1170.
In the instant case defendant emphasizes that Mrs. Roberts testified that while the fiberglass window curtains, children's books, and parts of an end table and rug were burned, no part of the window sill and frame were burned. However, the record indicates that Mr. Roberts twice testified that the floor woodwork was starting to smolder at the base *127 of the radiator. Officer Pitts said he "found charred debris on top of the radiator and also on the floor, part of the rug was burned, and the baseboard and the floor were also damaged." "Smolder" is defined in Webster's New International Dictionary (2d ed. 1958) as "To burn and smoke without flame; to waste away by a slow and suppressed combustion."
We are satisfied that there was sufficient evidence for a jury to conclude that a part of the building itself had been burned.
Defendant next contends that the court's charge was erroneous and prejudicial. His claim is based on the court's comment in its charge concerning the testimony given by the State's witnesses. The court said:
"Now, if you believe what he [Officer Pitts] says, that there was charring of the window sill, charring of the floorboard or the sill board, charring of the rug, charring of the books and others, I charge you not that it says this defendant is guilty of doing it, but I charge you that you do not have any labors to determine whether it's arson, because I charge you absolutely, positively it is arson, but that has nothing to do with this defendant, even though it's minimal, if you believe beyond a reasonable doubt what the state's witnesses have testified to as to the gravity. Now, this has nothing to do with innocence or guilt, but if you believe the testimony on the part of the state's witnesses, don't labor the question whether it's $10 or 2000, if you believe beyond a reasonable doubt that the charring was as they stated, don't labor the point whether it is or isn't arson, I charge you it's arson."
At the conclusion of the charge defendant's trial counsel objected on the ground that the question of whether the crime of arson had been committed was a matter for the determination of the jury and not the trial court. The court thereupon recharged the jury as follows:
"THE COURT: * * * I have charged you and I recharge you, if you find as a fact, if you believe the witnesses, and I have no recollection of it being controverted, if you believe the witnesses that were produced by the state beyond a reasonable doubt that there was charring of the woodwork under the window sill, charring of the *128 baseboard, charring of the rug, and charring or burning of the other instruments, if you believe that I charge you again that you are not to labor whether it amounts to $10, as someone has said in their closing, or $10,000, I charge you if you believe those facts beyond a reasonable doubt don't go any further to determine whether it was minimal, whether it is or isn't arson, I charge you it's arson.
MR. HOROWITZ: Are you charging the defendant committed the crime?
THE COURT: I told them innumerable times this has nothing to do with the defendant, this in no way says the defendant is guilty or innocent of the crime, just it is a question of don't have to labor that point if you believe that part. The next thing you have to labor is whether this defendant is innocent or guilty, and I have given you sufficient charge on that basis."
Thereafter defendant's counsel repeated his previous objection to the charge. He further contended that the trial court had misstated the evidence adduced at the trial.
On appeal defendant again argues that the court misstated the evidence and usurped the function of the jury by telling them that the crime of arson had been committed. He further contends that the court did not clearly outline for the jury the essential elements of the crime of arson applicable to this case and failed to explain the legal significance of "charring" as used in the charge.
We address our attention to what we believe is the most important question in this case. Was the jury misled by the court's charge?
In State v. Butler, 27 N.J. 560, 595 (1958), the court held that a trial judge has a mandatory duty to instruct the jury as to the fundamental principles of law which control a case and that among such principles is the definition of the crime. It said that the criminal law cannot be administered justly or efficiently if the jury is allowed to speculate as to what conduct the law intended to proscribe by a specified crime. It further said that the trial judge's duty is not affected by the failure of a defendant to request that it be discharged and that whether said failure would constitute plain error would depend upon the circumstances of the particular case.
*129 In the instant case at the beginning of its charge, the trial court correctly instructed the jury that to justify a conviction of arson under N.J.S. 2A:89-1 there must be proof of an actual burning of the dwelling house to constitute the offense, and that if any part of the building, however small, is consumed by the fire it is sufficient.
However, the court never instructed the jury that the burning of the personal property contained in the dwelling house, i.e., rug, books, and table and curtains, did not constitute the crime of arson under N.J.S. 2A:89-1. Instead, as set forth in the quoted portions of the charge above, it implicitly indicated that the burning of such articles could constitute the crime of arson. Moreover, the court failed to explain to the jury that "charring" as used in the charge means to reduce wood to charcoal by burning. (See 6A Words and Phrases, "Char" (1966), p. 236, and the cases cited therein.) We also note, parenthetically, that while the trial court indicated to the jury that the State's witnesses had testified that there was a charring of the window sill and the "sill board," the record does not support such statement.
In our opinion, the failure of the court to instruct the jury that the burning of the personal property did not constitute the crime of arson under N.J.S. 2A:89-1, the implication to the contrary contained in the court's charge, and the court's failure to define the meaning of "charring" once it had used that term in the charge, was misleading to the jury to the prejudice of the defendant. Under the instructions given by the court, a jury of laymen could well have concluded that the burning of the personal property alone was sufficient to justify a verdict finding defendant guilty of the crime of arson.
Under the circumstances of this case, where evidence that the dwelling house had been burned depended primarily on the statement of one witness that the woodwork was "starting to smolder" and there was considerable evidence of the burning of personal property, we are convinced that the court's charge so adversely affected the substantial rights *130 of the defendant as to constitute prejudicial error and require a reversal of the conviction. While the defendant did not at the trial specifically object to the references in the charge to the charring of the personal property or to the court's failure to charge that the burning of personal property would not violate the statute, we are nevertheless satisfied that plain error was committed. R.R. 1:5-1(a).
In view of the foregoing, we deem it unnecessary to consider the remaining points urged for reversal.
The judgment of conviction is reversed and the case is remanded for a new trial.