267 N.J. Super. 482 (1993)
631 A.2d 1267
STATE OF NEW JERSEY, PETITIONER-RESPONDENT,
v.
IN THE INTEREST OF M.N., JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1993.
Decided October 12, 1993.
*483 Before Judges SHEBELL and LANDAU.
Zulima V. Farber, Public Defender, (Frank Pugliese, Assistant Deputy Public Defender, argued the cause for appellant, of counsel and on the brief).
Nicholas L. Bissell, Jr., Somserset County Prosecutor, (Robin Bolner, Assistant Prosecutor argued the cause for respondent, Claudia L. Marchese, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
*484 On January 30, 1992, the juvenile, M.N., was charged in a delinquency complaint with acts which if committed by an adult would constitute third-degree arson (N.J.S.A. 2C:17-1b) and third-degree criminal mischief (N.J.S.A. 2C:17-3a(1)). The property damaged by M.N. was separated in the complaint into two counts:
1. Count One, charging third-degree arson of a garage.
2. Count Two, charging third-degree criminal mischief of a boat.
In April 1992, following a bench trial, the Family Part judge concluded that M.N. did not purposely set the boat or garage on fire, but that, beyond a reasonable doubt, M.N. "purposely lit a fire" by striking a match. Therefore, the judge found M.N. guilty of third-degree arson of the garage as alleged in count one of the complaint. The judge made no findings on the charge of third-degree criminal mischief involving the boat as contained in count two of the complaint. M.N. was sentenced on June 4, 1992, to two years of probation and was ordered to complete one hundred hours of community service and to attend individual counselling.
In his brief on appeal, M.N. argues:
POINT I
M.N.'S CONVICTION OF THIRD DEGREE ARSON MUST BE VACATED AND THE CHARGES DISMISSED.
A. The Court's Finding That M.N. Purposely Started A Fire By Merely Lighting A Match Is Erroneous.
B. The State Failed To Prove That M.N. Recklessly Endangered Or Destroyed The Property Of Another.
C. The Court Failed To Make A Finding Regarding Whether Or Not M.N.'s Conduct Toward The Property Of Another Was Reckless.
D. Since M.N.'s Conduct Amounted To Mere Negligence He Could Not Have Been Found Culpable For Anything Other Than Criminal Mischief In The Fourth Degree.
POINT II
THE DOCTRINE OF DOUBLE JEOPARDY REQUIRES THAT THE ALLEGATION OF CRIMINAL MISCHIEF CONTAINED IN COUNT TWO OF THE COMPLAINT MUST BE DISMISSED. (Not Raised Below)
On December 10, 1991, at about 8:00 a.m., twelve-year-old M.N., a seventh grader, was walking to the school bus stop. As was his *485 usual habit, he took a short-cut through three owners' properties. According to M.N., while walking, he found a book of matches near his house. He picked up the matches, lit one, and threw it onto the road. He continued on to the bus stop "throwing the matches around and cutting through the people's yards." When he got to a tree by the yard of the victim, M.N. lit a match, blew it out, threw it, and then threw the entire book of matches away and walked on to catch his bus.
An unknown man knocked on the door of a nearby house, shouted "fire," and ran away. The neighbor saw flames across the street, called the police, and attempted to put out the fire with a garden hose. He observed that the fire was actually coming from a boat parked next to a detached garage which was at the rear of the property. The owner of the property was summoned from work. When he arrived home, he saw his boat and garage on fire. The fire destroyed the boat, a substantial portion of the detached garage, one antique car, sporting equipment, and other personal items. The owner estimated the damage to the boat and the garage and its contents to be approximately $100,000.
A Franklin Township detective, assigned to the Police Arson Squad, investigated the fire. He arrived on the scene at 9:30 a.m. He observed that it had rained overnight and that the ground was very wet. He noted that the garage had burned from the outside in and that there were no "heat sources" (i.e. extension cords, batteries) in or near the boat.
After finding a piece of paper with "Franklin School" written on it and learning that the school bus picked up students at around the time the fire began, the detective asked a patrolman to go to the school and ask the principal and students if anyone had knowledge of the fire. M.N. became a suspect when the detective was informed by the property owner's daughter that M.N. had been observed on previous occasions taking a short cut through the yard on his way to the bus stop.
*486 The detective spoke to the principal at M.N.'s school and expressed his desire to talk with the student about the fire. M.N.'s mother came to school and in the presence of the principal, the detective questioned the young man. M.N., however, lied about the route that he had taken to the bus stop. At trial, M.N. explained that he had not told the truth because he knew he was playing with matches on the property and was afraid.
The following morning, the principal called the detective to say that M.N. and his mother wanted to speak with him again. They met at police headquarters shortly after the phone call. According to the detective, M.N. admitted that he had cut through the victim's property. M.N. also allegedly stated that he lit a match, blew it out, and threw it on leaves at the rear of the boat. M.N. was said to have further stated that he lit the entire book of matches and threw that away.
After this meeting, the detective returned to the property to look for a burned book of matches. He was directed by the owner's daughter to a burned matchbook she had discovered in a neighbor's backyard, began at approximately seventy feet away. M.N. testified that he was not near the boat that day. Although he was playing with matches on the property, he claimed it was by the street. M.N. asserted that he cut through the yard in front of the garage and did not see the boat at all.
The detective also testified as an arson expert at trial. He expressed his belief that the fire was a result of arson. He felt that the fire could have been started with only paper or matches and estimated that it began approximately 8:15 a.m.

I.
We first consider whether the judge misconceived the applicable law or misapplied it to the facts. See Kavanaugh v. Quigley, 63 N.J. Super. 153, 158, 164 A.2d 179 (App.Div. 1960).
On the issue of whether M.N. purposely started a fire, the trial judge interpreted the statute to mean that merely lighting a *487 match constitutes the purposeful starting of a fire, because the lighting of a match "starts a fire, albeit a small fire." The judge concluded that, in these circumstances, "[t]he purposeful act that the statute proscribes is the act of lighting the match." The trial judge, however, found that M.N. did not intend to set the boat or garage on fire. He found that M.N. only intended to light the match. Although the detective testified that M.N. had told him that after he lit the match he also lit the book of matches, the judge made no finding regarding the lighting of the book of matches.
N.J.S.A. 2C:17-1b provides:
A person is guilty of arson, a crime of the third degree, if he purposely starts a fire or causes an explosion, whether on his own property or another's:
(1) Thereby recklessly placing another person in danger of death or bodily injury;
or
(2) Thereby recklessly placing a building or structure of another in danger of damage or destruction.... (Emphasis added).
In order for M.N. to be guilty of third-degree arson, two elements of culpability  "purposely start[ing]" and "recklessly placing"  must be proved. Therefore, the youth must have "purposely" started a fire and, in so doing, he must have "recklessly" placed the life or structure of another in danger.
"Purposely" is the highest standard of culpability in the Code of Criminal Justice. N.J.S.A. 2C:2-2b(1). According to this provision:
A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist.... [Ibid.]
"Crimes entailing purposive conduct by definition focus on the subjective attitude of the accused: they require not only that he engage consciously in the proscribed conduct, but that he desire the prohibited result." State v. Harmon, 104 N.J. 189, 201, 516 A.2d 1047 (1986).
The State argues that M.N.'s act of striking a match "started" a fire and that is the only purposeful act necessary. The State adds *488 that it need not prove that M.N. "set" the fire because "starting" and "setting" are two different things. M.N. submits "that the court's finding that he purposely started a fire by merely lighting a match is erroneous." M.N. further submits "that while his lighting a match may prove he literally started a fire on a matchhead, it fails to prove beyond a reasonable doubt that he `purposely start[ed] a fire,' as within the statutory meaning of the term."
New Jersey's pre-Code arson statute provided that "any person who willfully or maliciously burns" another's dwelling house or its adjacent structures is guilty of arson. N.J.S.A. 2A:89-1; see State v. Lucas, 30 N.J. 37, 152 A.2d 50 (1959); State v. Schenk, 100 N.J. Super. 122, 241 A.2d 267 (App.Div. 1968). This language was changed to "[a] person is guilty of arson, ... if he purposely starts a fire or causes an explosion...." N.J.S.A. 2C:17-1b. The definition of purposely provided in N.J.S.A. 2C:2-2b(1) means that "[defendant] acted purposely if it was his `conscious object to engage in conduct of that nature or to cause such a result.'" State v. Williams, 263 N.J. Super. 620, 630-31, 623 A.2d 800 (App.Div. 1993). Facial application of the statutory language to these facts can be seen to support the position of both the State and the defense. Therefore, we must determine the meaning which most comports with legislative intent, common sense, and legal precedent.
The Code Commentary to aggravated arson (N.J.S.A. 2C:17-1a) is instructive. That provision uses the same language  "starts a fire or causes an explosion," notes that the language employed was meant to include culpability "even though the fire is extinguished before any significant damage is done." New Jersey Penal Code, Vol. II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission, § 2C:17-16 at 205 (1971). It is significant, however, that N.J.S.A. 2C:17-1b differs from Subsection a in that it does not require that the actor have the purpose of placing persons or property in danger so long as the fire or *489 explosion is purposely started. The Commentary specifically gives the following example:
The requirement of purpose to destroy or damage, in clause (1) of Subsection a, makes it clear that the mere employment of fire with more limited purposes, e.g., use of an acetylene torch to detach metal fixtures from a structure, or to gain entry to a building or safe, does not fall within the crime of Aggravated Arson defined by Subsection a. See State v. Schenk, supra. It may, however, lead to liability for Arson under Subsection b.

[Commentary, supra (emphasis added)]
It is against this background that we look to the case law for some assistance on the question of whether in these circumstances merely lighting a match constitutes "purposely start[ing] a fire" under Subsection b.
In State v. Krieger, 96 N.J. 256, 475 A.2d 563 (1984), reversed for reasons expressed in the Appellate Division's dissent, 193 N.J. Super. 568, 475 A.2d 608 (App.Div. 1983), cert. denied, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984), two fires of incendiary origins occurred within two weeks of each other at a mattress factory. Krieger, supra, 193 N.J. Super. at 570, 475 A.2d 608. The defendant was a company employee who had applied to be a city fireman. He confessed to having a cigarette and playing with matches in the room where the fire took place. Id. at 572, 475 A.2d 608. He stated that he dropped the matches on the floor in order "to start paper on fire and burn the mats." Ibid. He claimed he had planned to start the fire the day before it happened because he wanted to gain the recognition that would come when he extinguished the fire. Id. at 573, 475 A.2d 608. He gave this same reason for starting the second fire. Ibid. In his confession regarding the second fire, defendant described how he lit a cigarette and put it near the book of matches with the intent of starting a small fire. Id. at 574, 475 A.2d 608.
At trial, defendant denied the truth of his confession. Ibid. The Appellate Division majority reversed the conviction based on the requirement of State v. Lucas, 30 N.J. 37, 152 A.2d 50 (1959), that when a confession is offered for the truth of its contents, "the State must introduce independent proof of facts and circumstances *490 which strengthen or bolster the confession and tend to generate a belief in its trustworthiness, plus independent proof of loss or injury...." Krieger, supra, 193 N.J. Super. at 575, 475 A.2d 608 (quoting Lucas, supra, 30 N.J. at 56, 152 A.2d 50). In his dissent, adopted by the New Jersey Supreme Court majority, Judge Michels held that the State's case was sufficient because it established that the defendant was on the premises at the time of the fire, the defendant's job duties entailed frequent trips through the area of the plant where the fire occurred, the defendant expressed a motive, and the fire investigators concluded that the fire had been intentionally set. Id. 193 N.J. Super. at 580-82, 475 A.2d 608. Even though the issue in Krieger was different than the case at bar, it is informative as to the proofs generally regarded as necessary to demonstrate arson.
Here, the judge concluded only that M.N. purposely lit a match. There was no finding that M.N. had a purpose to start any other fire, even the leaves, at that time. The judge did not conclude that M.N. purposely lit anything except the match. This is not enough reasonably to constitute an element of the crime of third-degree arson. In Krieger, the plaintiff planned and intended to start a small fire when he dropped the book of lit matches. M.N. had no such plan or purpose under the findings of the trial judge. We are convinced that "purposely" lighting a match does not, in these circumstances, satisfy the requirements of "purposely starts a fire" as proscribed in N.J.S.A. 2C:17-1(b). Moreover, purposely lighting the match, in the absence of an additional act or omission by the accused, could not in these circumstances have "[t]hereby recklessly plac[ed]" the structures of another in danger. N.J.S.A. 2C:17-1(b)(2) (emphasis added).
In view of the above, M.N.'s conviction for third-degree arson on Count One cannot stand. We need not consider his argument that his conviction was also deficient because of the failure of the judge to make a finding as to whether M.N.'s conduct was reckless. We do, however, remand to the Family Part for a determination as to whether the juvenile is guilty of criminal mischief, a lesser included *491 offense of Count One. See State v. LaPierre, 39 N.J. 156, 166, 188 A.2d 10 (1963).

II.
M.N. was charged in Count Two of the complaint with third-degree criminal mischief (N.J.S.A. 2C:17-3) pertaining to the boat. The trial court made no conclusions regarding M.N.'s guilt or innocence on this Count. The State admits that the trial court failed to conclusively resolve this issue. For the first time on appeal, M.N. contends that this charge must be dismissed because the doctrine of double jeopardy precludes him from being prosecuted a second time. The State contends that the remedy for the trial court's failure to make a determination is to remand the case back to the trial court for additional findings on this charge.
The double jeopardy clause, contained in New Jersey's constitution, as well as in the Fifth Amendment of the United States Constitution (applicable to the states through the Fourteenth Amendment), guarantees that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb." N.J. Const., art. I, ¶ 11; U.S. Const., amend. V and XIV. N.J.S.A. 2C:1-9 also provides circumstances when prosecution is barred by former prosecution for the same offense. M.N.'s case does not fall into any of the enumerated statutory circumstances. Nonetheless, we believe that the doctrine of fundamental fairness bars an entry of a judgment or re-prosecution regarding the charge of criminal mischief contained in the second count. In State v. Currie, 41 N.J. 531, 539, 197 A.2d 678 (1964), our Supreme Court stated that a court's "primary considerations should be fairness and fulfillment of reasonable expectations in light of the constitutional and common law goals." Relevant factors that help determine the "fundamental fairness" of the double jeopardy principle "include the speed with which such violations are generally tried, the extent of the evidential presentation and of the legal representation, and the maximum terms and fines allowable and anticipated *492 by the defendant." State v. Yoskowitz, 116 N.J. 679, 706, 563 A.2d 1 (1989) (citing Currie, supra, 41 N.J. at 543, 197 A.2d 678).
The alleged criminal mischief offense occurred on December 10, 1991. M.N. was found guilty of arson on April 21, 1991, and, on June 4, 1992, was ordered to serve two years probation and one hundred hours of community service. We are advised he has completed these requirements. Up to the present time, the State has not sought to expand the judge's findings or to otherwise proceed on the second count.
In determining whether a re-prosecution involves double jeopardy concerns, the doctrine of fundamental fairness is to be sparingly applied. State v. Fullard, 251 N.J. Super. 45, 51, 596 A.2d 779 (Law Div. 1991). "It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment or egregious deprivation." Yoskowitz, supra, 116 N.J. at 712, 563 A.2d 1. Since the offense occurred almost two years ago and M.N.'s punishment has been fulfilled, reprosecuting on the additional criminal mischief charge would violate our basic concepts of fundamental fairness.

III.
Finally, M.N. argues that if he is found guilty of the criminal mischief offense, the grading of the charge should be fourth-degree instead of third-degree. We agree.
N.J.S.A. 2C:17-3 provides:
A person is guilty of criminal mischief if he:
(1) Purposely or knowingly damages tangible property of another or damages tangible property of another recklessly or negligently in the employment of fire, explosives or other dangerous means ...
(b) Grading. Criminal mischief is a crime of the third degree if the actor purposely causes pecuniary loss of $2000 or more.... It is a crime of the fourth degree if the actor causes pecuniary loss in excess of $500.00 but less than $2000.00, or a disorderly persons offense if he causes pecuniary loss of $500.00 or less. (Emphasis added).
M.N. points out that an "anomaly" exists within the grading section of the statute. The plain language of the grading section pertaining to third-degree criminal mischief requires that the *493 actor purposely cause pecuniary loss. Since M.N. has been found not to have purposely caused the damage, his criminal mischief conviction cannot be viewed as a third-degree offense.
The problem is that the statutory language indicates only that fourth-degree criminal mischief applies if the actor caused loss in excess of $500, but less than $2,000. The damage caused to the victim's property was in excess of $2,000. Here, the grading provision of the statute fails to take into account the non-purposeful offender, such as M.N., who causes pecuniary loss in excess of $2,000. We conclude, nonetheless, that because M.N. did not act purposely, the charge must be graded as fourth-degree and not third-degree criminal mischief. If the Legislature intended otherwise, it must clarify the ambiguity in the statute. We have no alternative but to strictly construe the language we have been given.
Reversed and remanded for entry of a judgment of acquittal as to third-degree arson and adjudication of whether M.N. is guilty of the lesser included offense of fourth-degree criminal mischief under Count One.