762 A.2d 309

STATE OF NEW JERSEY, IN THE INTEREST
OF M.C., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 2000—Decided December 5, 2000.

claimants under our construction of the Rule. For example, if the plaintiff in this case had obtained a jury verdict in the amount of $4740 (79% of the offer), the Rule would require that she pay costs, litigation expenses and attorney fees, irrespective of the fact that prejudgment interest and taxed costs would most likely add the necessary $60 to bring her within the requirement that the verdict be at least 80% of the offer. This scenario, or one similar to it, is more likely to occur than the one now before us. Indeed, a verdict as low as 65% of the offer may bring about the same result. Under such hypothetical circumstances, we would expect the arguments of counsel to be the exact opposite of the positions taken in this case. A plaintiff would want prejudgment interest and taxed costs added to the verdict in order to escape the sanction of the Rule, while a defendant would claim that the Rule addresses the verdict and not the judgment. We point the issue out simply to highlight the fact that when bright lines are drawn inequities may result from application of the Rule to peculiar facts. The Civil Practice Committee may want to reconsider the language of the Rule and decide whether the threshold for claimants should include prejudgment interest and taxed costs.

Before Judges COBURN and AXELRAD.

*Kevin G. Roe*, argued the cause for appellant (Kevin G. Roe and Associates, attorneys; Nina C. Remson, on the brief).

*Susan W. Sciacca*, Deputy First Assistant Prosecutor, argued the cause for respondent *(William H. Schmidt*, Bergen County Prosecutor, attorney; *Ms. Sciacca*, of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

M.C. was adjudged delinquent by a Family Part judge for conduct which if committed by an adult would constitute third-degree arson, *N.J.S.A.* 2C:17–1b(1); third-degree arson, *N.J.S.A.* 2C:17–1b(2); fourth-degree failure to control or report dangerous fire, *N.J.S.A.* 2C:17–1c(2); third-degree recklessly causing widespread injury or damage, *N.J.S.A.* 2C:17–2b; and fourth-degree

criminal mischief, *N.J.S.A.* 2C:17–3. Since the judge erred in finding defendant guilty of those offenses, we reverse.

On April 17, 1997, at approximately 7:50 p.m., a fire was started in a 132,000 square foot building in Lodi known as the National Wholesale Liquidators, a retail store that was being serviced by over thirty employees and concessionaires and contained over 100 shoppers. The only evidence of M.C.'s involvement came from his statement to Sergeant Adrian J. Cales of the Bergen County Prosecutor's arson squad. The statement indicated that M.C. and two friends, D.A. and O.F., entered the store that evening shortly before the fire without any intent to set a fire even though they each had disposable lighters. Eventually, they came to an aisle that had aerosol cans containing Lysol Air Freshener. At first they sprayed each other with the cans. Then, as they were standing in an aisle that had cardboard boxes on shelves, they each used their lighters to turn the cans into hand-held torches. M.C. did not see any smoke at that point. Apparently a few moments later, D.A., "told [M.C.] to turn around." When he turned, M.C. "saw a box and smoke coming out of it." He denied seeing either O.F. or D.A. "put his torch against the box to set it on fire." And he denied having done so himself. When they realized the box was burning, they put the lighters back in their pockets and the aerosol cans back on the shelves and ran out of the store.

Testifying as an expert witness, Sergeant Cales testified that the combination of an aerosol can and a butane lighter could not have caused the fire accidentally because the flame had to be sustained and the person using the aerosol can and butane lighter had to maintain the proper distance between the two or the aerosol spray would extinguish the lighter's flame.

The dispositive point argued by M.C. is that the State failed to prove its case beyond a reasonable doubt. We agree.

Third-degree arson requires as its first element proof that the accused "purposely start[ed] a fire." *N.J.S.A.* 2C:17–1b.

The trial judge found M.C. guilty on the theory that lighting the aerosol can was the starting of a fire. In *State v. Interest of M.N.*, 267 *N.J.Super.* 482, 631 *A.*2d 1267 (App.Div.1993), we held that lighting a match that was discarded without any intent to start a fire was not purposely starting a fire under the arson statute even if the match thereafter caused the fire. *Id.* at 490, 631 *A.*2d 1267. The judge attempted to distinguish *M.N.* on the ground that in addition to igniting the lighter, M.C. used it to light the aerosol spray. But in the context of arson that is a distinction without a difference. The point of *M.N.* is that the accused must purposely start the fire, not merely ignite something capable of causing the fire. Although an aerosol-can-torch may be more dangerous than a lighter, the can's spray did nothing more than extend the flame, and M.C. was not charged or tried for setting the contents of the can on fire. Under the Code, for conduct to be "the cause of a result" at a minimum it must be an "antecedent but for which the result in question would not have occurred." *N.J.S.A.* 2C:2–3(1). Since the flame from M.C.'s torch touched nothing, he did not set the fire. Therefore, he was not guilty of either count of arson. We add that the judge properly did not consider whether M.C. might be liable as an accomplice to the arson since there was no evidence that he was aware that that offense was being committed. *See State v. Bielkiewicz,* 267 *N.J.Super.* 520, 527–28, 632 *A.*2d 277 (App.Div.1993).

▪ *N.J.S.A.* 2C:17–1c(2), fourth-degree failure to control or report a dangerous fire, requires proof that "[t]he fire was started, albeit lawfully, by [the accused] or with his assent, or on property in his custody or control."

The judge found M.C. guilty as an accomplice on the theory that he had somehow assented to the starting of the fire. He reasoned that M.C. had been reckless and that his "actions proximately caused the box catching on fire." He explained that M.C. and the other two juveniles had been running around and shooting their torches at each other. He added that it was M.C.'s "direct participation that left O.F. aiming his torch at M.C. When M.C.

ducked out of the way, the box caught on fire. If M.C. had not ducked, the flame would not have hit the box." The judge found "that M.C., through his recklessness *encouraged, incited* and *instigated* O.F. to shoot the flame in his direction."

That description of the events came from O.F.'s confession which was not offered by the State as against M.C. and was not admissible against M.C. since O.F. did not testify at this joint trial. *State v. Young,* 46 *N.J.* 152, 156, 215 *A.*2d 352 (1965). Also, the State's expert testimony indicated that the fire could not have been started in the manner indicated by the judge because his description of the event did not involve a sustained action of holding the fire to the box. Furthermore, as we have noted, there is insufficient evidence that M.C. was an accomplice of the juvenile who set the fire. Since the fire was set without M.C.'s knowledge, it can hardly be said that it was started with his assent.

*N.J.S.A.* 2C:17–2b provides, "A person who recklessly causes widespread injury or damage is guilty of a crime of the third degree ." The judge, recognizing that M.C. did not commit this act as a principal, found him guilty as an accomplice. Again, that finding lacks sufficient support in the evidence since M.C. was entirely unaware of the other juvenile's act and did not become aware of the fire until after it had been set.

Under the last charge, criminal mischief, M.C. was found guilty of damaging property. *N.J.S.A.* 2C:17–3. Although the judge does not say so, it would appear that this finding was also based on the theory of accomplice liability. Since M.C. damaged no property, that was the only theory on which he could have been found to have violated this statute. For the reasons stated above, that theory is inapplicable to this case.

Since none of the charges was proved, we are obliged to reverse.

Reversed.