NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5953-13T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DATRELL T. WILLIAMS,

    Defendant-Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| June 22, 2015 |
| APPELLATE DIVISION |

_____

Argued March 23, 2015 — Decided June 22, 2015

Before Judges Lihotz, Espinosa and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 13-07-0671.

Gretchen A. Pickering, Assistant Prosecutor, argued the cause for appellant (Robert L. Taylor, Cape May County Prosecutor, attorney; Ms. Pickering, of counsel and on the brief).

Peter T. Blum, Assistant Deputy Public Defender, attorney for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Blum, of counsel and on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

After concluding that a prosecution was not barred by either double jeopardy or the mandatory joinder rule, the trial

court dismissed an indictment with prejudice against defendant, relying upon the "doctrine of fundamental fairness and equitable treatment." We agree with the trial court that prosecution of the cocaine charges was not barred by double jeopardy or the mandatory joinder rule, N.J.S.A. 2C:1-8(b) and R. 3:15-1(b). The question presented by the State's appeal is whether, under the facts of this case, the rarely applied doctrine of fundamental fairness is properly relied upon to protect the defendant from oppression and harassment. We conclude that the application of the doctrine here was a mistaken exercise of discretion and reverse.

I.

Although the mandatory joinder rule does not apply, a review of its origin and application provides helpful background for our consideration of the issue on appeal. The rule had its origin in State v. Gregory, 66 N.J. 510 (1975). The Supreme Court announced the adoption of a rule that would conform to Section 1.07(2) of the American Law Institute's Model Penal Code, which provides that "a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode where the prosecuting attorney knows of the offenses when he begins the first trial

and the offenses are within the jurisdiction of the court." Id. at 519 (internal quotation marks omitted).

In State v. Yoskowitz, 116 N.J. 679 (1989), the Court identified the four criteria a defendant must satisfy in order to invoke the mandatory joinder rule: "(1) the multiple offenses are criminal; (2) the offenses are based on the same conduct or arose from the same episode; (3) the appropriate prosecuting officer knew of the offenses at the time the first trial commenced; and (4) the offenses were within the jurisdiction and venue of a single court." Id. at 701.

## II.

The facts are undisputed. On August 20, 2011, defendant was a passenger in a vehicle that was stopped in Upper Township. After searching the vehicle, officers found a large quantity of marijuana in the trunk. Defendant was arrested and, on April 3, 2012, was charged in Indictment No. 12-04-0238, with one count of third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1). In March 2013, defendant pled guilty to this charge pursuant to a plea agreement in which the prosecution agreed to recommend a non-custodial period of probation. On May 3, 2013, defendant was sentenced to two years' probation and a twelve-month suspension of his driver's license. The probation was to run concurrent with a two-year

term of probation already imposed upon defendant on another indictment.

On May 14, 2013, just eleven days after defendant was sentenced on Indictment No. 12-04-0238, defendant was arrested in Upper Township on a warrant charging him with possession and distribution of cocaine. The charges were based upon sales he made to Detective Steve McCullen, an undercover officer employed by the Cape May County Prosecutor's Office, of 1.85 grams of cocaine on August 9, 2011, in Dennis Township, and 6.588 grams of cocaine on August 19, 2011, in Upper Township. Those sales formed the basis for two counts of third-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1); N.J.S.A. 2C:35-5(b)(3), charged against him in Indictment No. 13-07-0671.

Defendant filed a motion to dismiss the indictment. Defense counsel argued that all the charges against defendant arose from conduct during August 2011 and that in entering his guilty plea, defendant had a reasonable expectation he was resolving all criminal matters against him in Cape May County. Citing Gregory and State v. James, 194 N.J. Super. 362 (App. Div. 1984), counsel asked the court to find the charges arose from the same criminal episode and that the charges relating to the undercover sales should be dismissed as a matter of fundamental fairness.

The State argued the charges in Indictment No. 13-07-0671 were wholly unrelated to the earlier charge that was the subject of the plea agreement. Although conceding the State was charged with knowledge of the undercover sales, the assistant prosecutor stated the prosecutor's office was unaware of the August 2011 undercover sales when defendant was sentenced under Indictment No. 12-04-0238, and did not have a responsibility to check for outstanding charges. Noting "plea agreements . . . [do not] encompass every single criminal activity that [a defendant has] committed up until that point," the prosecutor argued it would impose an unreasonable burden to require the State to canvas all investigating authorities to determine whether there are any open files against a defendant before entering into a plea agreement. Addressing the nearly two-year delay in bringing the charges, the prosecutor responded that the delay was not uncommon and noted the charges were brought well within the statute of limitations, N.J.S.A. 2C:1-6(b)(1). The prosecutor also explained the reason for delaying the filing of charges arising from an undercover operation:

> [A]n undercover officer like Detective Mc[C]ullen . . . once they charge someone he can never be used as an undercover officer in Cape May County again. It will not happen. And so generally a year goes by.

In response to a directive from the trial court, the prosecutor's office provided a certification after the hearing explaining the reason for the delay in charging defendant. The certification stated the investigation was initiated in August 2011 and "remained active" until April 2013 in "an effort to reach 2nd degree weight." The prosecutor's office had to close the investigation after Detective McCullen resigned in April 2013 because he was the only undercover officer in contact with defendant.

The trial judge rendered an oral decision granting defendant's motion and dismissing Indictment No. 13-07-0671 with prejudice. As we have noted, she did not find the prosecutor's office acted with malice. She also determined neither double jeopardy nor the mandatory joinder rule applied to require dismissal of the indictment. Citing Gregory, the judge stated,

> The doctrine of fundamental fairness protects a defendant from governmental harassment and oppression by multiple prosecution for the same wrongful conduct. . . . The fundamental fairness doctrine in the context of double jeopardy is based upon the reasonable expectation of the parties.

However, the judge found that Gregory was distinguishable. She found further that defendant's case "clearly involved different episodes."

The trial judge acknowledged it was not feasible for the prosecutor's office "to stop and canvass every single file that the prosecutor has to determine whether" there are open cases against a defendant before entering into a plea agreement. She further accepted the legitimate objective of the prosecution to keep the undercover investigation open to accumulate sales to reach a weight that would result in a more serious charge against defendant. She added,

> But when a Prosecutor's Office does that and within its own office has another case going on involving the same defendant, it is this [c]ourt's belief that it should be the responsibility of someone in that Prosecutor's Office to coordinate those events and to understand what is going on.
>
> . . . .
>
> [T]here's some responsibility when a defendant has already pled. . . . [A]nd perhaps it's just a matter of having some sort of a cross-reference within the Prosecutor's Office that before they come to court and . . . accept a plea . . . or go forward on a sentencing that someone from that office should be looking back to find out if there's a possibility that there's something out there pending. . . . This [c]ourt finds it is fundamentally unfair at this point to subject [defendant] to prosecution under this indictment . . . .

III.

"[O]ur courts have long held that a dismissal of an indictment is a draconian remedy and should not be exercised

except on the clearest and plainest ground." State v. Peterkin, 226 N.J. Super. 25, 38 (App. Div.) (citations and internal quotation marks omitted), certif. denied, 114 N.J. 295 (1988); see also State v. Hogan, 336 N.J. Super. 319, 344 (App. Div.), certif. denied, 167 N.J. 635 (2001). "Dismissal is the last resort because the public interest, the rights of victims and the integrity of the criminal justice system are at stake." State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2004). Even in a case in which we found an investigating officer's "brazen misconduct" to be "wholly reprehensible," we reversed the dismissal of seventeen indictments, stating, "we question whether the public must pay the price by forfeiting its day in court on otherwise properly found indictments." Peterkin, supra, 226 N.J. Super. at 30-31. Therefore, although a motion to dismiss an indictment is directed to the sound discretion of the court, State v. Hogan, 144 N.J. 216, 229 (1996), "an indictment should stand unless it is palpably defective." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010) (citation and internal quotation marks omitted).

In this case, the trial judge correctly ruled that the compulsory joinder rule did not apply because the offenses were neither based on the same conduct nor arose from the same

episode.[1]  See Yoskowitz, supra, 116 N.J. at 701.  The purely legal question before us is whether the judge abused her discretion by relying upon the doctrine of fundamental fairness to dismiss the indictment.  Review of a trial judge's legal interpretations is de novo.  State v. Grate, 220 N.J. 317, 329 (2015); Lyons, supra, 417 N.J. Super. at 258.  "[I]f a trial court's discretionary decision is based upon a misconception of the law, a reviewing court owes that decision no particular deference."  Lyons, supra, 417 N.J. Super. at 258.

We acknowledge that "a trial court has inherent power to fashion remedies in the interest of justice, which may include dismissal of a[n] indictment for reasons of fundamental fairness even in circumstances where a defendant's constitutional rights are not implicated."  Ruffin, supra, 371 N.J. Super. at 385 (citing State v. Cruz, 171 N.J. 419, 427 (2002)).  However, our review of the applicable legal principles and the record leads us to conclude the trial judge mistakenly exercised her discretion in dismissing the indictment as a matter of fundamental fairness.

"For the most part," the concept of fundamental fairness "has been employed when the scope of a particular constitutional

---

[1]  Although defendant argues on appeal that the offenses "appear[] to be part of the same broad criminal episode," he has not filed a cross-appeal from this ruling.

protection has not been extended to protect a defendant." _Yoskowitz_, _supra_, 116 _N.J._ at 705. As the Court observed, the doctrine "has been an 'elusive concept . . . [where] exact boundaries are undefinable.'" _Ibid._ (alteration in original) (quoting Bruce D. Greenberg, _New Jersey's "Fairness and Rightness" Doctrine_, 15 _Rutgers L.J._ 927, 928 (1984)).

The elusive quality of the doctrine is highlighted by the fact that the "leading" cases described in _Yoskowitz_ as addressing fundamental fairness in the context of a multiple prosecution, _id._ at 705-07, do not, in fact, turn on an application of the doctrine.[2] A review of cases that have considered this issue is helpful to identify factors relevant to a determination whether multiple prosecutions not barred by double jeopardy or the compulsory joinder rule should be barred as a matter of "fundamental fairness."

The issue in _Gregory_ was whether the State could pursue separate trials against a defendant for the sale of a small quantity of heroin as well as possession with intent to distribute a larger quantity of heroin that had been the source

---

[2] In addition, although the issue of fairness in a multiple prosecution situation was discussed in both _State v. Williams_, 172 _N.J._ 361 (2002), and _State v. Veney_, 409 _N.J. Super._ 368 (App. Div. 2009), the determinative question in both cases was whether the mandatory joinder rule, _N.J.S.A._ 2C:1-8(b) and _Rule_ 3:15-1(b), barred the second prosecution. _Williams_, _supra_, 172 _N.J._ at 363; _Veney_, _supra_, 409 _N.J. Super._ at 372.

of the quantity sold.  Gregory, supra, 66 N.J. at 511-13.  The Court described the pertinent facts in Gregory as follows:

> On December 27 the defendant had possession of all of the heroin in the bathroom cabinet when the undercover officer came to his apartment.  The officer saw the heroin in the cabinet and purchased a small quantity in a glassine envelope which was taken therefrom.  Though he then left the apartment he returned almost immediately with other officers to seize the remaining heroin.  While the sale of the small quantity and the continuing possession of the larger quantity may under our case law be viewed here as separate offenses, surely the occurrences in their entirety at the defendant's apartment on December 27 involved the same conduct or the same criminal episode for purposes of procedural joinder.
>
> [Id. at 522 (emphasis added).]

In announcing the mandatory joinder rule, the Court found that a second trial for possession with intent to distribute was barred because the prosecution would violate Section 1.07(2) of the Model Penal Code.  Ibid.

The Court reasoned:

> The Prosecutor was fully aware of all of the pertinent circumstances before the first indictment was returned.  He had broad discretionary powers and in the exercise of his discretion he could have sought indictment for (1) the sale or (2) the possession with intent to distribute, or both.  He sought and obtained indictment only for the sale and not until after trial thereon was completed did he seek and obtain indictment for the possession with intent to

distribute.  This course was <u>patently unfair</u> <u>to the defendant and was in clear conflict</u> <u>with the goals and terms of § 1.07(2)</u>.

[<u>Id.</u> at 523 (emphasis added) (citation omitted).]

The <u>Yoskowitz</u> Court described <u>State v. Currie</u>, 41 <u>N.J.</u> 531 (1964), as the "seminal double-jeopardy case decided on the basis of fairness and the reasonable expectations of the defendant. . . ." <u>Yoskowitz</u>, <u>supra</u>, 116 <u>N.J.</u> at 705. After a motor vehicle stop, the defendant in <u>Currie</u> sped away, striking one police officer, hitting the police car, and causing a second officer to leap out of harm's way. <u>Currie</u>, <u>supra</u>, 41 <u>N.J.</u> at 533. The defendant was convicted in municipal court for reckless driving and leaving the scene of an accident. <u>Id.</u> at 533-34. He was convicted over one year later of atrocious assault and battery and, in his appeal, argued the second prosecution "was barred under principles of double jeopardy, and res judicata or collateral estoppel." <u>Id.</u> at 535.

The Court stated "the constitutional safeguard against double jeopardy . . . justly assures that the State with its great resources will not be permitted to harass and oppress the individual by multiple prosecution or punishment for the same offense." <u>Id.</u> at 536. However, the Court observed, "[t]he difficulty arises in determining just when we are dealing with the same offense within the contemplation of the safeguard."

Ibid. The policies underlying the safeguard dictate that "[t]he primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." Id. at 539.

The Court also discussed the practical factors relevant to a determination as to whether a second prosecution involves "elements of oppression or harassment" or violates the reasonable expectations of the defendant. Id. at 543. The Court noted that motor vehicle violations are tried expeditiously, in a comparatively informal proceeding with a limited evidential presentation in which the defendant faces minor fines and jail terms. Ibid. The Court concluded, "The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding while barring it would operate with gross unfairness to the State." Ibid. Accordingly, the Court rejected the defendant's claim that the second prosecution was barred by double jeopardy, res judicata or collateral estoppel. Id. at 545.

In State v. Tsoi, 217 N.J. Super. 290 (App. Div. 1987), we reversed the dismissal of an indictment for third-degree theft

by embezzlement based upon multiple thefts that followed the defendant store clerk's guilty plea in municipal court to a single theft of $85. Id. at 292-94. We stated, "We do not consider it reasonable that [the defendant] would . . . expect that 67 other instances of embezzlement totaling over $6,000, and known at that time only to her, would be disposed of upon the single plea in municipal court." Id. at 295. Applying the principles articulated in Currie and Gregory, we held that the elements of harassment and oppression were not present and the second prosecution was not barred. Id. at 295, 297; see also State v. Catanoso, 269 N.J. Super. 246, 249, 274 (App. Div.) (holding defendant who was indicted twice for his participation in a conspiracy to receive kickbacks had no reasonable expectation that his trial on one "Canadian golfing junket conspiracy would discharge his criminal responsibility for the lengthy conspiracy . . . charged in the first indictment"), certif. denied, 134 N.J. 563 (1993).

Both State v. Tropea, 78 N.J. 309 (1978) and State v. Godfrey, 139 N.J. Super. 135 (App. Div.), certif. denied, 73 N.J. 40 (1976), concerned attempts to prosecute a defendant on charges after the State failed to prove his guilt in a prior prosecution for a related offense.

In <u>Tropea</u>, the defendant's conviction for operating his vehicle at forty-four miles per hour in a twenty-five mile-per-hour zone was reversed on appeal based on the State's failure to prove the applicable speed limit. <u>Id.</u> at 311. Rather than dismissing the charges, we remanded the matter for retrial. <u>Ibid.</u> After granting certification, the Supreme Court elected not to decide whether double jeopardy applied and instead barred the second trial on fundamental fairness grounds. <u>Id.</u> at 315-16. The Court explained:

> Here the failure of the State to have produced an essential element of proof, namely, the applicable speed limit, remains without satisfactory explanation. It was raised by defendant as an objection at the trial level. While a defendant subjected to multiple speeding prosecutions may very well face less embarrassment, expense and anxiety than are encountered by those faced with criminal prosecutions, nevertheless the burdens to which he is subjected are not mere trifles. Under the circumstances of this case <u>a rerun at the trial level would result in unwarranted harassment and should be avoided</u> if the interests of justice will not otherwise be disserved.
>
> They will not. Here <u>another trial would merely afford the State another opportunity to produce evidence which it failed to muster</u> at the original proceedings.
>
> [<u>Id.</u> at 316 (emphasis added).]

The defendant in <u>Godfrey</u> was acquitted of receiving stolen property by the trial judge because the proofs showed that

defendant had himself stolen the van in question.[3]  Godfrey,

supra, 139 N.J. Super. at 137.  We concluded the State was

barred from subsequently prosecuting the defendant for stealing

the van and knowingly bringing the van into New Jersey, N.J.S.A.

2A:119-9.[4]  Godfrey, supra, 139 N.J. Super. at 138.  Observing

that "the State, with knowledge of the facts, chose the wrong

statute under which to prosecute," we found such prosecution was

barred on both double jeopardy and fundamental fairness grounds

and, further, that the facts fell "squarely within Gregory."

Id. at 141.

In a case decided after Yoskowitz, a juvenile argued he

should not be prosecuted a second time on one of two counts when

the trial court had made no conclusion regarding his guilt or

innocence on the charge.  State v. M.N., 267 N.J. Super. 482,

491 (App. Div. 1993).  Although we found that a second

prosecution was not barred on double jeopardy grounds, we

concluded the doctrine of fundamental fairness barred re-

prosecution of that charge.  Ibid.  Still, we noted, "the

doctrine of fundamental fairness is to be sparingly applied."

---

[3]  N.J.S.A. 2A:139-3 provided, "Any person who receives or purchases a motor vehicle knowing it to have been stolen, is guilty of" an offense.

[4]  N.J.S.A. 2A:119-9 provided, "Any person who, having at any place without this state stolen property of another, . . . brings the same into this state, is guilty of" an offense.

Id. at 492. "'It is appropriately applied in those rare cases where not to do so will subject the defendant to oppression, harassment or egregious deprivation.'" Ibid. (quoting Yoskowitz, supra, 116 N.J. at 712 (Garibaldi, J., concurring and dissenting)).

We reiterate that the offenses here are clearly separate offenses not subject to the mandatory joinder rule or vulnerable to dismissal on double jeopardy grounds. Although all the offenses involved controlled dangerous substances and occurred in August 2011, they concern different transactions and, indeed, different drugs. The charge that resulted in a guilty plea arose from a motor vehicle stop that yielded the recovery of a quantity of marijuana. The indictment charged defendant with discrete sales of cocaine to an undercover officer.

We then consider the factors relied upon in the caselaw to determine whether a second prosecution that is not barred under double jeopardy or mandatory joinder grounds should be dismissed under the fundamental fairness doctrine. Among the factors to be considered are: (1) the knowledge of the prosecutor regarding offenses that are ripe for charging against a defendant; (2) whether a second prosecution is attributable to malice, a failure to establish guilt in a prior proceeding, or to a legitimate prosecutorial objective; (3) whether elements of

harassment or oppression are present, and (4) whether the reasonable expectations of the defendant are defeated by a subsequent prosecution. In assessing these factors, we consider the facts "in a practical light." See Currie, supra, 41 N.J. at 539, 543.

In Gregory, the Court found it significant that the prosecutor was "fully aware" of the facts underlying the two offenses and exercised his discretion in a manner that was "patently unfair" to the defendant. Gregory, supra, 66 N.J. at 523. Although the prosecutor here must be charged with knowledge of the undercover sales, the record fails to show the prosecution was motivated by malice and the trial court so found. Moreover, the delay in bringing those charges was attributable to legitimate prosecution objectives - the protection of an ongoing undercover investigation and the effort to continue the investigation until the sales amounted to a higher degree offense. In contrast to Gregory, this was an appropriate exercise of prosecutorial discretion. And, this is not a case in which the second prosecution would merely serve to give the prosecution a second bite at proving the same underlying offense. See Tropea, supra, 78 N.J. at 316; Godfrey, supra, 139 N.J. Super. at 141.

Like Tsoi, the defendant here was engaged in continuing and separate criminal acts. Although the prosecutor was aware of the two undercover sales, defendant must also be charged with an awareness of his own criminal involvement. Under these circumstances, it was not reasonable for him to expect that his guilty plea to a third-degree marijuana charge would shield him from all other drug charges during a similar period of time. See Tsoi, supra, 217 N.J. Super. at 295.

In sum, this is not one of those "rare cases" in which the doctrine of fundamental fairness must be applied to protect a defendant from "oppression, harassment or egregious deprivation." Yoskowitz, supra, 116 N.J. at 712 (Garibaldi, J., concurring and dissenting).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION