STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
DANIEL CURRIE, DEFENDANT-APPELLANT.

Argued December 2, 1963—Decided February 17, 1964.

532

*Mr. Douglas T. Hague* argued the cause for the appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys; *Mr. Matthias D. Dileo,* of counsel).

*Mr. William D. Danberry,* Assistant County Prosecutor, argued the cause for the respondent (*Mr. Edward J. Dolan,* Middlesex County Prosecutor, attorney).

The opinion of the court was delivered by

JACOBS, J. On August 21, 1960 Lieutenant Mullen, Sergeant Koczan and Detective Petro of the Perth Amboy police force, in the course of an investigation, were riding in Koczan's car when they saw the defendant Daniel Currie driving a car. Koczan positioned his car diagonally across the road, whereupon Currie stopped some 25 feet away. Mullen then left the Koczan car, approached the Currie car and told Currie that he was a police officer. At that point Currie put his car in gear and started to make a sharp left turn around the Koczan car. Mullen, who had his hand on a door handle of the Currie car, was struck and was dragged about 10 or 15 feet. The Currie car then struck the Koczan car and, without slowing down, headed toward Petro who had left the car and was calling upon Currie to stop. To avoid being hit, Petro jumped into the air and landed on the hood of the Currie car. When Currie veered to the right Petro was thrown off the hood and onto nearby parked cars. The Currie car swerved back striking the Koczan car again, and then headed toward the intersection of Smith and Amboy Avenues where Detective Simon was stationed. Simon called upon Currie to stop but was ignored and had to jump for his own safety. Currie continued on his way and eluded the police for several hours before he was apprehended. He was charged in the Municipal Court of Perth Amboy with the Motor Vehicle Act violations

of reckless driving and leaving the scene of an accident. *N. J. S. A.* 39:4–96; *N. J. S. A.* 39:4–129. He was convicted on September 14, 1961 and thereafter appealed to the County Court. He was found guilty and fined $25 plus costs after a trial *de novo* before Judge Schwartz. *N. J. S. A.* 39:5–11; *R. R.* 3:10–10; *State v. Joas,* 34 *N. J.* 179, 189 (1961).

In September 1961 the Middlesex County Grand Jury returned three indictments against the defendant. Two charged that he had committed atrocious assault and battery against Mullen and Petro in violation of the Crimes Act. *N. J. S.* 2A:90–1. The third charged an attempt to commit an atrocious assault and battery on Simon in violation of the Crimes Act. *N. J. S.* 2A:85–5. The indictments were brought on for trial before Judge Molineux and a jury in the Middlesex County Court. Evidence was introduced as to both the happenings on August 21, 1960 and the extent of the injuries suffered by Mullen and Petro. Mullen's injuries were described as multiple contusions and bruises of the left shoulder, the left elbow and left leg, and a slight stiffening of the left side of the neck. Petro's injuries were described as a contusion of the left shoulder and chest, contusions of the left lumbo-sacral area, sprain of the left wrist and abrasions of the lower parts of both legs.

At the close of the State's testimony, the defendant moved for dismissal. His motion was denied and he then rested his case without taking the witness stand. The trial judge in his charge defined atrocious assault and battery and instructed the jury that in order to find the defendant guilty it must determine that he had acted with intent to do bodily harm to the persons named in the indictments. The jury returned verdicts of guilty on the indictments charging atrocious assault and battery on Mullen and Petro and not guilty on the indictment charging attempted atrocious assault and battery on Simon. Thereafter the defendant moved for a judgment of acquittal notwithstanding the verdict on the ground that the State had failed to prove that the injuries sustained were substantial. He further moved (in the event the motion for ac-

quittal was denied) for a new trial on the ground that the jury's verdict was against the weight of the evidence. His motions were denied and he was sentenced to serve concurrent terms in State Prison of not less than two nor more than three years. He appealed to the Appellate Division which affirmed in a *per curiam* opinion. He then applied to this Court for certification which was granted.

The first and primary point advanced by the defendant in support of his appeal is that, in view of the earlier proceedings under the Motor Vehicle Act, the State's prosecution of the indictments was barred under principles of double jeopardy, and *res judicata* or collateral estoppel. This point was not raised, as it should have been, in advance of the trial before Judge Molineux. See *R. R.* 3:5–5(b)(2); *State v. Mark,* 23 *N. J.* 162, 167 (1957); *State v. Boening,* 63 *N. J. Super.* 588, 592 (*App. Div.* 1960); *State v. Greely,* 30 *N. J. Super.* 180, 195 (*Hudson Cty. Ct.* 1954), aff'd 31 *N. J. Super.* 542 (*App. Div.* 1954). The applicable court rule provides that the defense of double jeopardy and other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation (except that it fails to show jurisdiction in the court) must be raised by motion before trial. Here there was no such motion; indeed the issue was not raised at any time before the trial judge. It was first presented to the Appellate Division which summarily rejected it under the authority of *State v. Shoopman,* 11 *N. J.* 333 (1953). In view of its importance and the absence of any objection by the State we shall now pass on it, although we again call the bar's attention to the unequivocal practice requirement that matters of this nature be raised before trial. See *State v. DiPaolo,* 34 *N. J.* 279, 287 (1961).

Blackstone gave early recordation in his Commentaries to the universal common law maxim that no man is to be placed in jeopardy "more than once for the same offense." The fifth amendment embodies this principle and someday it may be viewed as constitutionally binding upon the states by virtue of the fourteenth amendment. See *State v. Williams,* 30

*N. J.* 105, 122 (1959); *cf. Bartkus v. Illinois,* 359 *U. S.* 121, 79 *S. Ct.* 676, 3 *L. Ed.* 2d 684 (1959); *Hoag v. New Jersey,* 356 *U. S.* 464, 78 *S. Ct.* 829, 2 *L. Ed.* 2d 913 (1958); see also Henkin, " 'Selective Incorporation' in the Fourteenth Amendment," 73 *Yale L. J.* 74 (1963). In any event, most state constitutions contain comparable language; although New Jersey's constitutional language is narrower, the full sweep of the common law doctrine has been long and firmly accepted in our State. See *State v. Cooper,* 13 *N. J. L.* 361, 370 *(Sup. Ct.* 1833); *State v. Mowser,* 92 *N. J. L.* 474, 485 *(E. & A.* 1919); *State v. Labato,* 7 *N. J.* 137, 143 (1951). Our 1947 *Constitution* provides that, "no person shall, after acquittal, be tried for the same offense." *Art.* I, *par.* 11. That provision was not in the *Constitution of* 1776 and first appeared in the *Constitution of* 1844. *Art.* I, *par.* 10. The history of the 1844 constitutional convention discloses that the use of the more limited phraseology was intended not to impair the common law maxim but to insure that a defendant is not entitled to immunity from a second trial where his first trial ends, not in acquittal, but in jury disagreement or other indecisive disposition. See *City of Newark v. Pulverman,* 12 *N. J.* 105, 110 (1953); *State v. Roller,* 29 *N. J.* 339, 344 (1959); *State v. Williams, supra,* 30 *N. J.,* at *p.* 113.

No one currently questions the great worth of the constitutional safeguard against double jeopardy. It justly assures that the State with its great resources will not be permitted to harass and oppress the individual by multiple prosecution or punishment for the same offense. The difficulty arises in determining just when we are dealing with the same offense within the contemplation of the safeguard. As early as *State v. Cooper, supra,* 13 *N. J. L.* 361, the Supreme Court was confronted with the problem. There, Cooper wilfully burned a house and in the fire a man died. Cooper was charged with arson and murder. He was first convicted of the charge of arson and then was brought on for trial on the charge of murder. The State contended that the arson and murder were separate offenses and that consequently Cooper could not pre-

vail on his claim of double jeopardy. This contention was rejected by Justice Drake who noted that in the circumstances the charge of arson was an essential ingredient of the charge of murder and that trial of the lesser ingredient, whether it resulted in conviction or acquittal, barred later trial of the greater offense of which it was part. See also *State v. Hill*, 44 *N. J. Super.* 110, 112 (*App. Div.* 1957). In the course of his opinion he stressed the broad spirit, rather than the technical letter of the double jeopardy principle, and the injustice of first trying and punishing a man for arson based on his intentional wrongdoing and then separately trying and punishing him for murder based upon the unintended though consequential killing. See 13 *N. J. L.*, at *p.* 371.

In *State v. Mowser, supra,* 92 *N. J. L.* 474, the defendant and two others conspired to rob Richards. In the course of the robbery one of the defendant's coconspirators struck Richards and as a result Richards died. The defendant was charged in separate indictments with robbery and murder. He entered a plea of guilty to the charge of robbery and later the State sought to try him for murder. This prosecution was held barred within the principles set forth in *State v. Cooper, supra,* 13 *N. J. L.* 361. In his opinion for the Court of Errors and Appeals, Justice Kalisch approved what is generally known as the same transaction test. He expressed the view that if the robbery and murder grew out of the same criminal transaction, then a conviction or acquittal of one would bar the other. In *State v. Greely, supra,* 30 *N. J. Super.* 180, the court applied this test to preclude a robbery prosecution after the defendant had been acquitted on a charge of murder based upon a killing in the course of the robbery. See also *State v. Midgeley,* 15 *N. J.* 574, 579 (1954); *State v. DiGiosia,* 3 *N. J.* 413, 419 (1950). Other New Jersey decisions have applied the test in varying situations which need not be detailed here. See *State v. Cosgrove,* 103 *N. J. L.* 412 (*E. & A.* 1927); *State v. Pennsylvania R. R. Co.,* 9 *N. J.* 194 (1952); *State v. Boening, supra,* 63 *N. J. Super.,* at *p.* 594; *cf.* Lugar, "Criminal Law, Double

Jeopardy and Res Judicata," 39 *Iowa L. Rev.* 317, 323 (1954).

 In *State v. Hoag,* 21 *N. J.* 496, 502 (1956), aff'd 356 *U. S.* 464, 78 *S. Ct.* 829, 2 *L. Ed.* 2d 913 (1958), the majority opinion stated that the test most widely employed in New Jersey is the same evidence test; under this, if the evidence necessary to sustain the second charge would have been sufficient to sustain a conviction on the first, then the second charge is barred. This test was first expressed in *Rex v. Vandercomb,* 2 *Leach* 708, 720, 168 *Eng. Rep.* 455, 461 (1796); has been the subject of variations (Lugar, *supra,* 39 *Iowa L. Rev.,* at *pp.* 321–323); and finds expression in many New Jersey cases. See *State v. Hoag, supra,* 21 *N. J.,* at *p.* 502; *State v. DiGiosia, supra,* 3 *N. J.,* at *p.* 419. Neither the same transaction test nor the same evidence test is absolute or inflexible. *State v. DiGiosia, supra,* 3 *N. J.,* at *p.* 419; *State v. Roller, supra,* 29 *N. J.,* at *p.* 346. In *Roller,* this Court recently pointed out that neither test has proved to be entirely acceptable, while seeking the elusive ideal test the court has in each individual case conscientiously tried to safeguard the State's vital interest in bringing the guilty to justice while at the same time protecting the accused from multiple trial and punishment. See *State v. Dixon,* 40 *N. J.* 180 (1963); *State v. Mark, supra,* 23 *N. J.* 162; *State v. Leibowitz,* 22 *N. J.* 102 (1956); *State v. Midgeley, supra,* 15 *N. J.* 574.

In *State v. Hoag, supra,* 21 *N. J.* 496, four persons were held up in a tavern at about three o'clock one afternoon. The defendant was accused of being the holdup man and was brought to trial on a charge of having committed robbery on three of the victims. The defendant denied he was the robber and was acquitted. He was later tried on the charge that he had robbed the fourth victim. This time he was convicted and his conviction was sustained in this Court by a vote of four to three. The majority, stressing the same evidence test, upheld the second proceeding; the minority, stressing the same transaction test and placing reliance on principles of *res judicata* or collateral estoppel, would have barred the sec-

ond proceeding.[1] When the case reached the United States Supreme Court, that Court, in affirming, divided five to three with Justice Brennan not participating because he had voted with the minority in this Court. All in all, the decision furnishes poignant evidence of the futility of efforts extended towards the formulation of a single legal test to operate absolutely and inflexibly throughout the field of double jeopardy. See also *People v. DeSisto,* 27 *Misc. 2d* 217, 214 *N. Y. S. 2d* 858 *(Cty. Ct.* 1961), reversed *sub nom., People v. LoCicero,* 17 *A. D. 2d* 31, 230 *N. Y. S. 2d* 384 *(App. Div.* 1962) ; *cf.* Mayers & Yarbrough, *"Bis Vexari:* New Trials and Successive Prosecutions,"* 74 *Harv. L. Rev.* 1, 7, 14 (1960) ; but *cf. Model Penal Code* §§ 1.08–1.11 (Proposed Official Draft 1962).

██ In applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. In *State v. Labato, supra,* 7 *N. J.* 137, the defendant had lottery slips in his possession. He was charged in the Camden police court with violation of *R. S.* 2 :202–16 (now *N. J. S.* 2A :170–18) which provided that anyone in possession of lottery slips could be adjudged to be a disorderly person. If found guilty as such, he could be fined or imprisoned for a term not exceeding a year. *R. S.* 2 :205–1 (now *N. J. S.* 2A :169–4). The defendant entered a plea of *non vult* in the police court and received a sentence of $200 or 30 days in jail. Thereafter he was indicted for knowingly having the lottery slips in his possession in violation of the Crimes Act. *R. S.* 2 :147–3 (now *N. J. S.* 2A :121–3). The prosecution contended that since disorderly conduct is not viewed in our State as a crime and since the

---

[1] The majority opinion in *Hoag* has been forcefully criticized. See 74 *Harv. L. Rev.* 1, 35–39 (1960) ; 11 *Rutgers L. Rev.* 20, 25–26 (1956) ; 11 *Rutgers L. Rev.* 71, 88–95 (1956) ; 57 *Mich. L. Rev.* 409 (1959) ; 14 *Wash. & Lee L. Rev.* 80 (1957).

police court had no jurisdiction to try the crime charged in the indictment, the principle of double jeopardy was inapplicable. This contention was flatly rejected in an opinion for this Court by Justice Heher. But *cf. State v. Gralz,* 86 *N. J. L.* 483 (*Sup. Ct.* 1914), aff'd 88 *N. J. L.* 742 (*E. & A.* 1916); *State v. Firth,* 103 *N. J. L.* 275 (*Sup. Ct.* 1927). He placed reliance on the same evidence test and noted that, since the lesser offense charged in the police court was a necessary ingredient of the greater offense charged in the indictment, the conviction of the lesser barred prosecution of the greater under the holding in *State v. Cooper, supra,* 13 *N. J. L.* 361. More importantly, the defendant's possession was admittedly single and the charges were admittedly similar in nature; when he was tried and sentenced in the police court he reasonably expected that he would not be subjected to an independent later prosecution on a similar charge for the same possession; it would have violated considerations of fairness and the policies underlying the prohibition against double jeopardy to have exposed him to the subsequent prosecution.

The holding in *Labato* was followed in *State v. Mark, supra,* 23 *N. J.* 162, and *State v. Dixon, supra,* 40 *N. J.* 180. In *Mark,* the defendant was in the possession of obscene material and was charged in the municipal court with being a disorderly person in violation of *N. J. S.* 2A:170-1. He received a suspended jail sentence of one year and was fined $1,000. Thereafter he was indicted for possession of obscene material with intent to expose it in violation of the Crimes Act. *N. J. S.* 2A:115-2. His defense of double jeopardy was sustained in an opinion by Justice Wachenfeld who pointed out that, while the case should never have been tried in the magistrate's court and should have been originally referred to the county prosecutor, the proceeding in the magistrate's court precluded the later prosecution under the Crimes Act within the principles expressed in *Labato.* In *Dixon,* the defendant was charged in a municipal court with engaging in an illicit business in violation of the Disorderly Persons Act.

*N. J. S.* 2A:170–1. He was found guilty and paid a fine. Thereafter he was indicted for possession of illegal alcohol in violation of the Alcoholic Beverage Control Act. *R. S.* 33:1–50(e). The possession of the illegal alcohol had been used in the municipal court as the basis for the charge that he was guilty of having violated the Disorderly Persons Act. His plea of double jeopardy was sustained in an opinion by Justice Francis which cited *Labato* and quoted approvingly from *Mark*.

*Mark* and *Dixon*, as well as *Labato*, reached results which were on their facts entirely fair and consistent with reasonable expectations in the light of the constitutional and common law goals. But they never intended to convey the thought that every magistrate's determination, no matter how minor the offense charged before him, will necessarily preclude a subsequent criminal prosecution based in whole or in part on the same activity, no matter how aggravated the crime charged. Indeed in *Labato* itself Justice Heher seems to have recognized the contrary by his flat statement that the doctrine under which a person acquitted or convicted of a minor offense may not generally be charged again on the same facts in more aggravated form "does not apply when the subsequent charge is that of murder or manslaughter." 7 *N. J.*, at *p*. 146.

In *State v. Shoopman, supra,* 11 *N. J.* 333, the defendant was involved in an accident which caused a death. He was charged with reckless driving in violation of the Motor Vehicle Act (*R. S.* 39:4–96) and was acquitted in the municipal court. Thereafter he was charged with causing a death by driving an automobile carelessly in violation of the Crimes Act. *R. S.* 2:138–9 (now *N. J. S.* 2A:113–9). The defendant's assertion of double jeopardy was rejected. In his opinion for this Court, Justice Wachenfeld stressed the fact that the offense charged in the municipal court was not a crime but a violation of a regulatory enactment "for the protection of the public at large as to the way and manner a motor vehicle is to be driven" (11 *N. J.*, at *p*. 340); punishment for a first violation of that enactment could not at that time ex-

ceed a fine of $100 or imprisonment for 30 days or both. *L. 1928, c. 281, p. 736 (R. S. 39:4–96)*. He expressed the view that reckless driving in violation of the Motor Vehicle Act and death by reckless driving in violation of the Crimes Act were not the same offense and that prosecution for the latter after conviction or acquittal of the former did not violate either the spirit or the language of the constitutional mandate against double jeopardy "or trespass upon fundamental justice." 11 *N. J.,* at *p.* 336. In *State v. Mark, supra, Shoopman* was viewed as being "based upon the incongruous disparity between a crime involving a death and a mere violation of a traffic statute." 23 *N. J.,* at *p.* 169. See *State v. Albertalli,* 112 *A.* 724, 725 (*N. J. Sup. Ct.* 1915) ; *State v. Williams,* 21 *N. J. Misc.* 329, 330, 34 *A. 2d* 141 (*Recorder's Ct.* 1943) ; *cf. State v. Francis,* 67 *N. J. Super.* 377, 381 (*App. Div.* 1961).

In many of our sister states the courts have dealt with situations where the defendant, after having caused death or serious injury through the driving of his car, was first prosecuted before a magistrate or justice of the peace for a motor vehicle offense and then prosecuted for manslaughter or aggravated assault. They have almost invariably held that the second prosecution did not violate any double jeopardy or related principle. See *Dykeman v. Commonwealth,* 201 *Va.* 807, 113 *S. E. 2d* 867 (*Sup. Ct. App.* 1960) ; *Burnett v. Commonwealth,* 284 *S. W. 2d* 654 (*Ky. Ct. App.* 1955) ; *State v. Simmons,* 9 *Terry* 166, 48 *Del.* 166, 99 *A. 2d* 401 (*Super. Ct.* 1953) ; *Bacom v. Sullivan,* 200 *F. 2d* 70 (5 *Cir.* 1952), cert. denied 345 *U. S.* 910, 73 *S. Ct.* 651, 97 *L. Ed.* 1345 (1953) ; *State v. Garner,* 360 *Mo.* 50, 226 *S. W. 2d* 604 (*Sup. Ct.* 1950) ; *Campbell v. State,* 215 *Ark.* 785, 223 *S. W. 2d* 505 (*Sup. Ct.* 1949) ; *State v. Bacom,* 159 *Fla.* 54, 30 *So. 2d* 744 (*Sup. Ct.* 1947), cert. denied 338 *U. S.* 835, 70 *S. Ct.* 41, 94 *L. Ed.* 510 (1949) ; *State v. Thatcher,* 108 *Utah* 63, 157 *P. 2d* 258 (*Sup. Ct.* 1945) ; *Commonwealth v. Bergen,* 134 *Pa. Super.* 62, 4 *A. 2d* 164 (*Super. Ct.* 1939) ; *State v. Midgett,* 214 *N. C.* 107, 198 *S. E.* 613 (*Sup. Ct.*

1938); *People v. Herbert,* 6 *Cal.* 2d 541, 58 *P.* 2d 909 (*Sup. Ct.* 1936); *Commonwealth v. Jones,* 288 *Mass.* 150, 192 *N. E.* 522 (*Sup. Jud. Ct.* 1934); *State v. Empey,* 65 *Utah* 609, 239 *P.* 25 (*Sup. Ct.* 1925); *People v. Townsend,* 214 *Mich.* 267, 183 *N. W.* 177 (*Sup. Ct.* 1921). See also Annot., 172 *A. L. R.* 1053–1066 (1948).

The cited out-of-state decisions fully support the *Shoopman* result although the opinions embody legal formulations which do not articulate the relevant practical factors; there is little doubt that such factors play a vital part in the molding of double jeopardy doctrines. *Cf. Abbate v. United States,* 359 *U. S.* 187, 195, 79 *S. Ct.* 666, 670–671, 3 *L. Ed.* 2d 729, 734–735 (1959); Bigelow, "Former Conviction and Former Acquittal," 11 *Rutgers L. Rev.* 487, 505 (1957). Motor Vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law. The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a moderate fine. In the light of these circumstances, the refusal to permit the proceeding before the magistrate to bar subsequent criminal prosecution for the death or the serious injury caused by the defendant is readily comprehensible. The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding while barring it would operate with gross unfairness to the State.

It has been suggested that since the defendant in *Shoopman* was first acquitted of reckless driving he should, under principles of *res judicata* or collateral estoppel, have been pro-

tected against a later finding that he had been guilty of reckless driving causing death. Knowlton, "Criminal Law and Procedure," 8 *Rutgers L. Rev.* 78, 89–90 (1953) ; *cf. Sealfon v. United States,* 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948). The practical and related considerations which have already been mentioned may well explain the Court's unwillingness in *Shoopman* to deal with the summary proceeding in the magistrate's court as one carrying with it the far-reaching incidences of *res judicata* and collateral estoppel. However, we need not now pursue the matter for, in the case at hand, the defendant was not acquitted and is in no position to assert any benefit from a finding that he had not driven recklessly. *Cf. In re Martinis,* 20 *A. D.* 2d 79, 244 *N. Y. S.* 2d 949 (1963).

The criminal charges against the defendant were not, as in *Shoopman,* based upon careless or reckless conduct resulting in death but were based upon intentional assaults and batteries resulting in maimings or woundings. The jury found that the defendant, acting with intent to do bodily harm to Mullen and Petro, deliberately committed atrocious assaults and batteries on them. Those criminal violations bore no semblance of identity with any Motor Vehicle Act violations and may not commonsensibly be considered, within the intendment of the constitutional and common law prohibition against double jeopardy, as being the same offenses as those tried before the magistrate. When the defendant appeared before the magistrate on the charges of reckless driving and leaving the scene of an accident, neither he nor the State could reasonably have expected that any determinations there would bar later charges under the Crimes Act for his having intentionally committed atrocious assaults and batteries. The making of the criminal charges carried no aspects of unfairness or vexatiousness and their barring would seriously impede the proper administration of justice. Although the defendant has placed some reliance on the fact that the determinations in the magistrate's court were confirmed on appeal in the County Court, that fact has no pertinence to the issues

under consideration here. We are satisfied that, under the particular circumstances presented, the State's prosecution of the indictments was not barred by principles of double jeopardy or *res judicata* and collateral estoppel.

■ The second point advanced by the defendant in support of his appeal is that the finding that he was guilty of atrocious assault and battery was against the weight of the evidence; he does not question the sufficiency of the evidence that he deliberately ran into Mullen and Petro with intent to do them bodily harm but contends that their injuries were insubstantial and that consequently his conduct could amount to no more than simple assault and battery. The Appellate Division properly rejected this contention on the authority of *State v. Riley*, 28 *N. J.* 188 (1958), appeal dismissed 359 *U. S.* 313, 79 *S. Ct.* 891, 3 *L. Ed. 2d* 832 (1959), and *State v. Edwards*, 28 *N. J.* 292 (1958). In *Riley*, it was held that a defendant could be convicted of atrocious assault and battery even though there had been no breaking of the victim's skin. In *Edwards*, a brutal attack which resulted in injuries consisting largely of bad bruises and scratches, was found by the trial judge sitting without a jury, to constitute an atrocious assault and battery. In the course of its opinion upholding the finding, this Court noted that in determining whether an atrocious assault and battery has been committed, the brutal nature of the attack is of paramount importance and it pointed out that the resulting injuries need not be permanent although they must be "substantial rather than superficial" when considered in conjunction with the character of the assault. 28 *N. J.*, at *p.* 299.

Here, Judge Molineux instructed the jury that in order to find the defendant guilty of atrocious assault and battery, it must determine that his act was exceptionally vicious and caused injury to Mullen and Petro which was substantial when considered in conjunction with the character of the assault. The deliberate running down of the police officers with intent to cause them bodily injury was an exceptionally vicious act and the injuries suffered by the officers, while not

permanent, were in no sense superficial. Mullen received multiple contusions and bruises of the left shoulder, the left elbow, and left leg, and a slight stiffening of the left side of the neck, and Petro received a contusion of the left shoulder and chest, contusions of the left lumbo-sacral area, a sprain of the left wrist and abrasions of the lower parts of both legs. In the light of the holding in *Edwards* it is difficult to find any basis for the defendant's assertion that these injuries were "trivial in comparison to the standards set forth in the atrocious assault and battery statute" (*N. J. S.* 2A:90–1) ; in any event, the jury found, on adequate evidence, that the injuries were substantial and nothing before us would justify interference with that finding. *Cf. R. R.* 1:5–1(a) ; *State v. Smith,* 32 *N. J.* 501, 523–524 (1960), *cert.* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961).

█ In his third and final point the defendant contends that his right to trial by jury was impaired since the judge could not instruct as to simple assault and battery; in fact the jury was fairly instructed that if the State had not established beyond reasonable doubt that the defendant had committed atrocious assault and battery as charged, then he was entitled to an acquittal. The defendant's point was rejected by the Appellate Division which noted that no objection to the charge had been made at the trial and that, in any event, *State v. McGrath,* 17 *N. J.* 41 (1954), was controlling. In 1951 the Legislature provided that, effective January 1, 1952, simple assault and battery would constitute disorderly conduct rather than a misdemeanor. *N. J. S.* 2A:170–26. *State v. Maier,* 13 *N. J.* 235 (1953), held the statute to be constitutional and *State v. McGrath, supra,* held that the county court no longer had power to deal with simple assault and battery.

The defendant in *McGrath* had been indicted and tried in the Hudson County Court for both atrocious and simple assault and battery. On appeal, this Court noted that the simple assault and battery charge should have been dismissed and that the case should have proceeded, as here, on the charge of

atrocious assault and battery alone. 17 *N. J.*, at *p.* 43. In the course of his opinion Chief Justice Vanderbilt dealt with the subject fully and stressed the point that, when the Legislature downgraded simple assault and battery to disorderly conduct, it intended to withdraw all such cases from the jurisdiction of the county court and place them "within the sole jurisdiction of the municipal court." 17 *N. J.*, at *pp.* 44, 50. After the decision in *McGrath,* there were significant suggestions for modifying legislation which would enable the county court to deal with both atrocious and simple assault and battery. See Knowlton, "Criminal Law and Procedure," 10 *Rutgers L. Rev.* 97, 98–99 (1955); *State Bar Committee Report, Criminal Law,* 77 *N. J. L. J.* 408 (1954). No such legislation has thus far been enacted and the defendant has presented nothing which would persuade us to depart at this time from the Court's actual holding in *McGrath.*

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.