# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3214-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GERARD L. BROWN,

     Defendant-Appellant.

_____

Submitted April 12, 2021 – Decided May 4, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FO-13-0038-20 and Complaint No. W-2019-445-1325.

Eileen S. Den Bleyker, attorney for appellant.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outerio, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from a February 28, 2020 judgment of conviction, finding him guilty of harassment, N.J.S.A. 2C:33-4(a). Because defendant did not receive notice of the harassment charge prior to trial, he was deprived of his right to due process. Accordingly, we reverse his conviction for harassment.

In 2019, defendant was charged pursuant to N.J.S.A. 2C:29-9(b)(2) with disorderly persons contempt for violating a domestic violence final restraining order (FRO). The FRO, issued in 2005, prevented defendant from contacting V.R. (Vera).[1] Defendant and Vera never married but shared custody of their son, J.B. (John). The FRO barred defendant from Vera's residence and her place of employment. Regarding John, the FRO judge allowed defendant to pick him up and drop him off at Vera's home. During the FRO hearing, the judge stated, "Defendant is prohibited from having any kind of communication with [Vera,]" and then added "[a]nd not regarding communications with your son." From 2005 until June 2019, defendant never communicated with Vera directly.

On June 16, 2019, Father's Day, John was visiting at his father's home. Defendant planned to attend a family barbeque with his son. As they were leaving for the barbeque, defendant noticed John was not dressed appropriately for the occasion. Defendant instructed John to change his shirt, and he refused.

---

[1] We refer to the parties by initials to protect their privacy. R. 1:38-3(d)(10).

After John declined to change his shirt a second time, defendant indicated he would contact Vera to take John home. However, because it was a long drive, defendant rethought his original plan and decided to drive John to Vera's home. Defendant then contacted Vera to inform her of the events that transpired between father and son because he wanted everyone to be "on the same page."

Unbeknownst to defendant, John already texted his mother. In his text, John told his mother "Dad is trying to starve me out . . . because I won't ch[an]ge a shirt . . . ." John explained defendant was refusing to make breakfast based on the shirt incident. Upon receiving the text, Vera agreed to take John home.

After defendant decided to drive John to Vera's home, John advised his mother agreed to pick him up. Upon learning this information, defendant texted Vera. The texts read:

> Hello, there's no need to pick [John] up, I am coming to Long Branch in an hour. I had asked [John] to change his shirt because we were going somewhere for breakfast and I asked him to change into something much nicer and he refused. I kindly told him fine, he can make his own breakfast or warm up anything in the fridge. Sorry, but I'm not letting a 17-year-old determine when he listens. I've been nothing but nice to [John] and I demand respect. I did tell him that by you picking him up is not coparenting, you need to contact me first to see what [is] going on and then decide what to do. I've taken him to . . . a barbecue in Long Branch with family.

A-3214-19

. . . Any questions feel free to call. . . . But we [are] going out, it's still my weekend. I will bring [John] home at 3:00. . . . He is texting you and I just read to him what I wrote to you so we all be on the same page.

Two hours later, defendant texted the following to Vera:

You can't teach [John] to be a man, but you certainly have stunted his growth tremendously by sheltering him. Today was absolutely why [John] does not know how to figure things out and handle situations without your help. [John] was safe, it was a normal situation between father and son, and you interfered as usual. Have a good day.

Vera did not respond to defendant's text messages.

Defendant knew the FRO prohibited him from contacting Vera. However, defendant did not believe his texts were a violation of the FRO because he understood there was an exception in the FRO allowing him to text Vera "in case of a situation involving the child."

After sending the text messages to Vera, the police contacted defendant to advise he violated the FRO. Defendant searched for a copy of the 2005 FRO to confirm the violation of the order but was unable to locate the document.

On June 16, 2019, defendant was charged with disorderly-persons contempt, N.J.S.A. 2C:29-9(b)(2), for violating the FRO. On January 17, 2020, the court conducted a one-day trial on the contempt charge. Defendant and Vera

4

were the only witnesses who testified. At the conclusion of the testimony, the trial judge requested written summations from counsel.

In a February 28, 2020 ruling from the bench, the trial judge set forth his findings of fact and conclusions of law. He noted the judge who issued the 2005 FRO said "a few confusing things," including communications related to the parties' son. The trial judge remarked the FRO judge's statement was not the "clearest" way of explaining the scope of communications between defendant and Vera regarding their child.

Based on the filed charge, the trial judge correctly determined the State had to "prove defendant purposely or knowingly violated the restraining order." Defendant testified he did not recall the parameters of the FRO and had no intention of purposely violating the FRO. Based on the testimony and documentary evidence, the judge found defendant did not willfully violate the FRO and acquitted defendant of the contempt charge.

After finding defendant not guilty of contempt for violating the FRO, the judge sua sponte amended the charge against defendant to "a lesser charge of harassment . . . N.J.S.A. 2C:33-4(a)." However, the State never charged defendant with harassment.

In finding defendant guilty of harassment, the trial judge explained:

I think [harassment is] the more appropriate thing here, because I think these comments -- up until that point where I read were fine, but once you started with those comments directly against [Vera] and talking about how she is parenting, that clearly could be harassing and annoyed her, and based on her testimony and seeing her it upset her. That's really what harassment is.

After finding defendant guilty of harassment, the judge imposed monetary fines.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT ERRED IN SUA SPONTE AMENDING THE CHARGE TO HARASSMENT UNDER N.J.S.A. 2C:33-4(a) DEPRIVING DEFENDANT OF PROCEDURAL DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS AND VIOLATING PRINCIPLES OF FUNDAMENTAL FAIRNESS.

A. The Conviction Cannot Be Justified Under the Doctrine of Lesser Included Offenses, Nor That of Related Offenses.

POINT II

THE EVIDENCE IN THE RECORD IS INSUFFICIENT TO SUPPORT A CONVICTION UNDER N.J.S.A. 2C:33-4(a). (Not Raised Below).

A. Insufficient Evidence in the Record to Prove Defendant's Purpose Was to Harass.

B. Insufficient Evidence in the Record to Prove Defendant's Conduct Was Undertaken in an "Other Manner Likely to Cause Annoyance or Alarm"

6

Resulting in an Unconstitutionally Overbroad Application of the Harassment Statute.

POINT III

THE CONDUCT ALLEGED IN THE COMPLAINT WAS LEGITIMATE, CAUSED NO DEMONSTRABLE HARM AND THE CHARGES SHOULD HAVE BEEN DISMISSED UNDER THE DE MINIMIS STATUTE.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). However, we defer to a trial court's "findings of fact because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Hubbard, 222 N.J. 249, 262 (2015) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Defendant argues his conviction for harassment violated his due process rights because he had no notice or opportunity to defend against the amended charge. The State agrees, explaining it "cannot dispute that this error exists and that it warrants reversal of the defendant's conviction for petty-disorderly-persons harassment."

Even if the State had not agreed, we are satisfied the trial judge violated defendant's due process rights by sua sponte amending the charge against defendant after completion of the trial. "Due process requires that the charging instrument not only inform a defendant respecting the nature of the charge, but it must also inform an accused of how many charges he or she faces and when they occurred." State v. Salzman, 228 N.J. Super. 109, 114 (App. Div. 1987) (citing State In Interest of K.A.W., 104 N.J. 112 (1986)).

Here, defendant did not receive notice of the harassment charge until after the trial concluded. As a result of the failure to notify him of the harassment charge prior to trial so he could properly defend himself, defendant was denied due process. Having reviewed the record, we are satisfied defendant's conviction for harassment must be reversed.[2]

We remand the matter to the trial judge to vacate defendant's harassment conviction and enter a final judgment of acquittal on both the disorderly persons contempt charge for violation of the 2005 FRO and the amended harassment charge. The matter shall be deemed final such that the constitutional proscription against double jeopardy precludes a retrial of defendant for the

---

[2] Based on our reversal of the harassment conviction, we need not address defendant's remaining arguments on appeal.

events occurring on June 16, 2019.  See State v. Currie, 41 N.J. 531, 536 (1964) (explaining double jeopardy "justly assures that the State with its great resources will not be permitted to harass and oppress the individual by multiple prosecution or punishment for the same offense").  Additionally, the trial judge shall order a refund of all fines and penalties paid by defendant as a result of the harassment conviction.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3214-19