**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0378-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALI KARIM, a/k/a IBN ABDUL
KARIM, JAMES WRIGHT,
JAMES T. WRIGHT, IBN KARIM,
ALI I. KARIM, ALI K. IBN,
NOZKO BLAZEJ, NOZKO
BLAZE, and ALI K. IBN,

    Defendant-Appellant.

_____

Submitted January 12, 2021 – Decided April 14, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 11-06-1111 and 11-06-1112.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In a single trial, defendant Ali Karim was tried with his codefendant Anwar Crockett for a double-murder and related offenses; and for offenses that occurred four days after shots were fired at police officers from the vehicle occupied by both defendants as they were eluding. Although acquitted of all charges related to the double-murder, defendant and Crockett were found guilty by jury of second-degree eluding, N.J.S.A. 2C:29-2(b) (count 22); second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2; N.J.S.A. 2C:12-1(b) (count 23); four counts of second-degree weapons-related crimes, N.J.S.A. 2C:39-4(a); N.J.S.A. 2C:39-5(b), (f) (counts 30, 31, 32, 33); two counts of fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (counts 36, 37); and third-degree possession of controlled dangerous substances (cocaine), N.J.S.A. 2C: 35:10(a)(1) (count 34).[1]

---

[1] In a subsequent bench trial, defendant and Crockett were also convicted of two counts of second-degree certain-persons-not-to-have-weapons, N.J.S.A. 2C:39-7(b).

Though we remanded on a sentencing issue, we affirmed defendant's conviction on direct appeal that included his challenge to the trial judge's denial of his motion to suppress an identification from a photo array made by an Elizabeth police officer who observed defendant flee after the vehicle involved in the eluding crashed during police pursuit. State v. Karim, A-5614-12, A-0252-13 (App. Div. Nov. 6, 2015) (slip op. at 6-7, 10).

Defendant now appeals from the trial judge's[2] denial of his postconviction relief (PCR) petition, arguing:

> POINT I
>
> THE PCR JUDGE ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO DETERMINE THE MERITS OF HIS CONTENTION THAT HE WAS PROVIDED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND SUCH DEFICIENCIES MATERIALLY CONTRIBUTED TO HIS CONVICTION.
>
> A.  The Prevailing Legal Principles Regarding Claims of Ineffective Assistance of Counsel, Evidentiary Hearings and Petitions for Post-Conviction Relief.
>
> B.  Trial Counsel Rendered Ineffective Legal Representation by Virtue of [H]is Failure to Move to Sever the Co[]defendant.

---

[2] The trial judge also decided the PCR petition.

3

C. Trial Counsel Rendered Ineffective Legal Representation by Virtue of [H]is Failure to Properly Attack the Critical Eyewitness Identification.

D. Defendant [I]s Entitled to a Remand to the Trial Court to Afford [H]im an Evidentiary Hearing to Determine the Merits of [H]is Contention [t]hat [H]e [W]as Denied the Effective Assistance of Trial Counsel.

Reviewing the factual inferences drawn by the PCR judge and his legal conclusions de novo because he did not conduct an evidentiary hearing, State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), and considering "the facts in the light most favorable to [the] defendant," State v. Preciose, 129 N.J. 451, 462-63 (1992), we affirm because defendant did not establish a prima facie case of ineffective assistance of counsel under the test set forth in Strickland v. Washington, 466 U.S. 668 (1984),[3] to warrant an evidentiary hearing, see Preciose, 129 N.J. at 462-63; see also R. 3:22-10(b).

---

[3] To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test formulated in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable

Defendant argues his trial counsel was ineffective for failing to sever his trial from Crockett's because their "defenses were antagonistic" in light of the aftermath of the eluding. That high-speed chase from Elizabeth into Newark began after police received a report of shots fired at a red Pontiac and approached a vehicle matching that description. As the occupants fled, shots were fired from the Pontiac at the marked police cars in pursuit. At trial, the State alleged Crockett had exited the driver's side of the vehicle after the Pontiac crashed and assumed a "tactical position" prompting some officers to shoot him because they believed he was armed and preparing to shoot at them. He was taken into custody at the scene.

Crockett's trial defense challenged the officers' credibility, claiming during the opening statement that Crockett never exited the vehicle and was shot by police as he sat in the Pontiac. The defense tactic prompted the State to introduce evidence pursuant to N.J.R.E. 404(b) showing that bullet holes fired into the Pontiac were caused by a non-police shooter before the eluding.

In that defendant was not caught at the scene and claimed he was misidentified by the police officer, he reiterates the argument made during the

_____

probability" that the deficient performance affected the outcome. <u>Fritz</u>, 105 N.J. at 58.

PCR hearing that his defense had no link to Crockett's attack on "the credibility of the officers regarding the bullet strikes or the firing" into the Pontiac. Defendant argues he was prejudiced by the introduction of that evidence that "dragged [him] into the larger defense . . . marshalled on [Crockett's] behalf" and

> paint[ed him] as a "bad guy" involved with yet another shooting beyond the allegations of the murder charges from September 15. In other words, defendant was defending himself against murder charges from September 15 . . . , the eluding and weapons offenses of September 19, and now some unknown incident . . . where the Pontiac that he was identified as fleeing from, having been riddled with bullets at an earlier incident

that prompted the police to approach the Pontiac before the eluding. Defendant claims his trial counsel's failure to move for severance from Crockett left him "inescapably—and prejudicially—caught within this web of guilt and, as such, was severely prejudiced intrinsically by the antagonistic defense."

The trial judge adhered to the general principle that in a prosecution of two defendants involved in the same "criminal episode," see State v. Williams, 172 N.J. 361, 367 (2002), a joint trial is preferable to two separate trials because a joint trial "fosters the goal of judicial economy and prevents inconsistent verdicts," State v. Weaver, 219 N.J. 131, 157 (2014), particularly "when much

6

of the same evidence is needed to prosecute each defendant," <u>State v. Brown</u>, 118 N.J. 595, 605 (1990).  The judge recounted the evidence he had heard during trial and explained both defendant and Crockett were

> charged with the same offenses.  The jury determined each [defendant's] criminal responsibility for each of these offenses by virtue of each [defendant's] own conduct and by the conduct of another for whom [each was] "legally accountable" or both.  Since [defendants] were indicted as co-conspirators, the jury determined whether each . . . was "legally accountable" for the conduct of the other alleged conspirator.  This jury determination was based upon their evaluation of the coordinated and interdependent conduct of each [defendant].  For example, the jury considered evidence of passenger [defendant's] firing upon pursuing police officers in conjunction with driver Crockett's simultaneous efforts to elude these pursuing officers.

The judge concluded granting defendant's severance motion "would [have] require[d] . . . two separate four-week trials—one for the driver Crockett and one for the passenger [defendant]"—at which "the testimony of virtually all of the same witnesses" would have been required.

We recognize severance may be required under <u>Rule</u> 3:15-2(b) if a defendant meets the "rigorous" test for showing prejudice.  <u>Brown</u>, 118 N.J. at 605-06.  Defendant, however, has failed to meet that test by showing his and Crockett's defenses were "antagonistic at their core," <u>see</u> <u>Weaver</u>, 219 N.J. at 149; <u>Brown</u>, 118 N.J. at 606, meaning the two defenses were mutually exclusive

A-0378-19

in that "the jury can believe <u>only</u> either one defendant or the other," <u>Brown</u>, 118 N.J. at 606.

We agree with the trial judge's sound finding that the codefendants' defenses were not mutually exclusive:

> Crockett's credibility attack upon the officers who shot at him was not dependent upon [defendant's] presence at the scene. Similarly, [defendant's] challenge as to the accuracy of the [police] officer's identification of him in the car and fleeing from the crash scene is not dependent upon the circumstances of Crockett's shooting at the crash scene.

Neither defendant claimed the other, not he, was the guilty party. Instead, as the judge found, harkening to the trial evidence,

> both Crockett and [defendant] den[ied] that they were involved in any of the charged crimes, including the criminal homicide charges. Crockett conceded that he was at the crash scene but contended that the police were lying about the prior eluding and assault offenses to "cover up" their unjustified shooting of him. [Defendant] denied that he was at the crash scene or in the car during the eluding and assault offenses.

Severance is not warranted "[i]f the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely[.]" <u>Ibid.</u> Such was the case here. As the trial judge cogently noted, "[t]he jury's rejection of each defense [did] not render them inconsistent, only <u>independently unsuccessful</u>" (emphasis added).

Defendant's claim that the State did not prove he was in the Pontiac during the eluding and shooting was countered by the State's evidence of the officer's identification; defendant's DNA found on the Pontiac's passenger-side airbag and interior passenger door; as well as a cooperating witness's testimony that: he saw defendant in the Pontiac's passenger seat on the day of the eluding; he later saw the Pontiac "flying down" the street with defendant "hanging out the window" with a gun in his hand "like a minute" before he heard a crash and six to nine gunshots; defendant came to his house the day after the eluding having shaved the facial hair he had the day prior; defendant told him of the chase from Elizabeth and that "he jumped out the car with two guns, . . . threw them and . . . got away . . . . [but Crockett] got shot twice." His defense was not at all impacted by Crockett's claims.

We are unconvinced by defendant's argument that the evidence offered by the State against Crockett under N.J.R.E. 404(b) prejudiced his case. The trial judge told the jury they had to first decide whether to accept the evidence that the Pontiac was fired upon shortly before the eluding and "the projectile strike[]s on the driver's door had a source other than an Elizabeth police officer." He also instructed they had to determine whether the Pontiac that was fired upon before the eluding was the same Pontiac involved in the eluding. And he cautioned

9

they could not use that evidence for any other purpose than establishing that the bullet holes were not caused by shots fired by police. Moreover, the judge specified that the jury could not "speculate that any gunshots were fired by an occupant of [the] red Pontiac in the area" from which the shots-fired report emanated. He also told the jury it could "not use [that] evidence to decide that the defendants have a tendency to commit crimes or they are bad person[s]. That is, [the jury] may not decide that just because . . . defendant was previously an occupant of a vehicle hit by fire that he must be guilty of the present crimes." The jury is presumed to have followed that instruction. See State v. Marshall, 173 N.J. 343, 355 (2002). Hence, that evidence did not impact defendant's case.

A defendant claiming ineffective assistance of counsel based on a failure to file a motion must show the motion would have been successful. State v. Roper, 362 N.J. Super. 248, 255 (App. Div. 2003). Defendant failed to meet that burden regarding the severance motion.

Defendant also contends his trial counsel was ineffective for failing to investigate his contention that the officer's photo-array identification was made after a prior "angry confrontation at police headquarters," and the failure to

10

conduct an investigation resulted in counsel's "woefully inadequate cross-examination" of the police officer during the Wade[4] hearing.

When a defendant "claims his [or her] trial attorney inadequately investigated his [or her] case, he [or she] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid.; see also State v. Porter, 216 N.J. 343, 356-57 (2013) (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing). In other words, a defendant must identify what the investigation would have revealed and demonstrate the way the evidence probably would have changed the result. See Fritz, 105 N.J. at 64-65.

In his merits brief, defendant claims "[i]t could have easily been shown . . . [the identifying police officer] was on premises in the precinct . . . when defendant was booked into that same precinct" on unrelated charges nine days

---

[4] United States v. Wade, 388 U.S. 218 (1967).

after the eluding, "and that interaction . . . formed the basis for the so-called identification."  But defendant failed to demonstrate how that fact could have easily been shown.  During the <u>Wade</u> hearing, the police officer denied he had seen defendant at any time prior to his photo-array identification other than as he fled from the Pontiac.  Defendant proffered nothing to counter that testimony.  Even if the officer was at police headquarters when defendant was booked, nothing shows that he was in the location to which defendant was brought, saw defendant there or had any interaction with defendant.  In short, defendant has failed to make a prima facie case that counsel failed to properly investigate.

Nor has he shown that the failure to investigate affected his counsel's cross-examination, described by the trial judge as "extend[ing] not only to the threshold issue of suggestiveness, but the actual [photo] array procedures and any communications beforehand, but also extend[ing] to so-called reliability factors of the ability of the officer to make the observations [to] which he testified[.]"  Defendant does not point out what questions should have been asked based on the results of the investigation he contends should have been conducted.

Defendant has failed to meet either of <u>Strickland</u>-<u>Fritz</u>'s prongs.  He thus failed to establish a prima facie case that would entitle him to an evidentiary

hearing.  See Preciose, 129 N.J. at 462-63.  The trial judge properly denied defendant's PCR petition without one.  See State v. Marshall, 148 N.J. 89, 158 (1997).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0378-19